## GRIFFITH v. SLAYBAUGH (two cases).

Court of Appeals of District of Columbia.

Submitted October 4, 1928. Decided November 5, 1928.

Nos. 4684, 4685.

J. Miller Kenyon, Bion B. Libby, and John J. Wilson, all of Washington, D. C., for appellant.

Joseph W. Cox, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. These are actions in tort by defendants in error, plaintiffs below, to recover damages for injuries received in an automobile accident. From judgments in favor of plaintiffs, these appeals were taken.

The accident occurred on the evening of December 4, 1926, about 9 o'clock, when plaintiff Annie L. Slaybaugh was conducting her daughter, plaintiff Edith G. Slaybaugh, who was totally blind, across the intersection of Sixteenth and Euclid streets in this city. They approached Sixteenth street on the south side of Euclid from the east. At the intersection, traffic is controlled by signal lights located in each of the four corners. The red light indicates to approaching traffic that the crossing is closed, and the green light

indicates that the passage is open. Between the switch from the red light to the green light appears an amber light for a short period of time, which indicates a change from the red to the green, or from the green to the red, and is a signal of caution. When the plaintiffs arrived at the southeast corner of the intersection, the mother stopped and observed that the green light was on, indicating open traffic on Euclid street. She also noticed several cars stopped on the west side of Sixteenth street, facing south, being held there by the red light forbidding their advancement while Euclid street was open. Conducting her daughter, the mother stepped from the curb, walking rapidly. When they had taken a few steps, she looked again and the green light was still on. When they had crossed almost to the west curb of Sixteenth street, she suddenly saw a glare and they were almost instantly struck by defendant's car.

It appears that when defendant approached the intersection from the north on Sixteenth street, he found the red light signal against him. He stopped his car between the westerly curb of Sixteenth street and a touring car, which stood near the center of the street. All the curtains but one on the touring car were closed. The front wheels of defendant's car were stopped about opposite the rear wheels of the touring car. When the green light came on, both cars started across the intersection; no pedestrians being in sight so far as defendant could observe. Defendant drove his car in about the same relative position with reference to the touring car as it had been when he stopped. Defendant testified that his view across the easterly side of Sixteenth street at the intersection was totally obscured by the position of the touring car, and the fact that the side curtains on it were closed. After both cars had crossed the intersection, the plaintiffs, crossing in front of the touring car, appeared suddenly in front of defendant's car. Defendant applied his brakes, but too late to prevent knocking the plaintiffs down and injuring them as set forth in the record.

There is a single assignment of error, namely, as to whether there is evidence of such negligence on the part of the defendant as will sustain the judgments.

The Traffic and Motor Vehicle Regulations of the District of Columbia, in force on the date of the accident, provide, among other things, as follows:

"Article II, Section 2 (a). Pedestrians shall have the right of way at all crosswalks except those controlled by traffic officers and the traffic devices, and it shall be unlawful for any person to cross the roadway through moving traffic on any street upon which traffic is controlled by electric signal lights."

"Article III, Section 4 (b). A vehicle overtaking another shall pass to the left of the vehicle so overtaken: Provided, however, that, except on boulevard highways, no vehicle shall pass or attempt to pass another vehicle going in the same direction at a street intersection nor on any highway where the view of the road is obscured."

■ It will be observed that under the traffic regulations pedestrians are given the right of way at all crosswalks, except at controlled crossings. At controlled crossings, pedestrians have the right of way along with other traffic moving in observance with the traffic signals. Plaintiffs entered the crossing while the green signal light was displayed, and having committed themselves to the crossing, they had the right of way until they could reach the opposite curb. As said in Riddel v. Lyon, 124 Wash. 146, 213 P. 487, 37 A. L. R. 486:

"We must hold that one entering the street intersection under the direction of the traffic officer has the right of way and this right of way continues until he reaches the other side of the street, and the fact that the semaphore was changed, giving the traffic in the other direction notice to proceed, does not give them the right of way over the one first entering the street crossing, and the one first entering has the right to presume that he can pass over in safety and is not required to exercise continuous and extra observation to avoid vehicles using such street."

This is a clear expression of the law as announced in many cases touching the right of way of pedestrians at crossings controlled either by a traffic officer or signals. Quaker Cab Co. v. Fixter (C. C. A.) 4 F.(2d) 327; Gilles v. Leas, 282 Pa. 318, 127 A. 774.

■ With this situation confronting defendant, what duty was imposed upon him, and what was required of him to avoid the charge of negligence? Clearly there was no contributory negligence on the part of the plaintiffs, since they were where they had a right to be and were diligently using their best efforts to clear the street. They unquestionably had the right to enter upon the street when there was nothing to obstruct the crossing, and when the traffic signal was open. Their position only became perilous through the negligent conduct of defendant in not taking the necessary precautions to observe their position. The negligence of defendant consisted in placing himself in a position where

he could not observe the crossing, and determine before starting to cross that the way was clear of pedestrians. Having stopped in that position, he was negligent in undertaking to cross the street while maintaining the same relative position to the touring car. Defendant was charged with knowledge that other persons have a right to use and cross the street. Anticipating as he must that the street would be so used by pedestrians, it was his duty to look, to see, and to know that pedestrians were not in his road. In this situation he is required to so operate his machine that persons rightfully in, or attempting to cross, the street shall not be injured. His failure to see plaintiffs in time to avoid injury is no excuse. Due care required him to see them. It is negligence for the driver of an automobile not to see pedestrians under such circumstances, and it is negligence to so run the machine that injury cannot be avoided after such persons are seen. Croatian Bros. Packing Co. v. Rice (Ind. App.) 147 N. E. 288, 291.

The condition of traffic in our crowded streets is such that travel by pedestrians is at best difficult and dangerous. If their absolute right to enter upon a crossing when the signal permits it is not sustained, they would be almost without protection. Entering under this invitation, they cannot be charged with contributory negligence, if the signal switches when they are in the street. Caught in this position, the obligation rests upon the drivers of automobiles, not only to observe the situation, but to wait until the crossing is clear. Many automobile drivers seem to imagine that with the shift of the signal they are given a clear right of way against intersecting traffic. In this belief they recklessly start their machines, regardless of persons who are already rightfully on the intersection. It is the duty of drivers of machines to exercise the greatest vigilance and care under such circumstances, not only to have their machines under control, but to stop and wait until pedestrians have had an opportunity to clear the crossing. Failure to observe these precautions constitutes negligence on the part of the driver, which in case of accident is chargeable against him.

█ The duty and responsibility imposed upon drivers of automobiles is measured by the possibilities of dangers attending their use upon the public highways. It is a vehicle of great weight, speed, and power, in contact with which the pedestrian is helpless. "It is but a rational rule which emphasizes the driver's duty of special vigilance at crossing points on city streets, where the right of passage is not only free and common to all, but in common and frequent use both by pedestrians and vehicles. While the duties of reasonable care for their own safety and that of others are imposed upon both pedestrian and driver, the driver's comparative personal safety in case of collision with a pedestrian is not to be overlooked in measuring his duty to exercise commensurate care for the safety of others." Patterson v. Wagner, 204 Mich. 593, 600, 171 N. W. 356, 359.

█ The rate of speed at which defendant was proceeding across the street is of little importance. His negligence consisted in placing himself in a position where he could not observe the conditions at the crossing. In the case of O'Connell v. Lusk, 122 Kan. 186, 250 P. 1059, where the conditions were somewhat similar to those in the present case, and the jury specifically found that defendant's vision was obscured by a car in front of him and by the foggy state of the weather, the court said:

"An automobile driver must take note of weather conditions and objects obstructing his view and must operate his car with due regard to the safety of others, under the circumstances limiting his ability to see."

The rule here announced may appear to be a harsh one, but the traffic conditions in our crowded streets demand it for the protection of life and limb. Drivers of automobiles should remember that pedestrians have the right of way on all crossings, except at controlled crossings, where they have the right of way to enter upon the crossing when the crossing is open, and that right of way continues until they have reached the opposite curb. As a matter of public policy and public interest, drivers of automobiles should be held to the strictest accountability, where pedestrians are injured at public crossings, and there should be no laxity on the part of the courts in applying the rule of negligence in such cases.

The judgments are affirmed, with costs.