ELEANOR K. STAFFORD *vs.* DELIGHT S. JONES.

Suffolk.   May 15, 1934. — November 26, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Negligence,* Motor vehicle, In use of way.   *Law of the Road.*

The evidence did not warrant a finding of negligence on the part of the
   operator of an automobile who proceeded across an intersection of
   streets at the direction of a traffic officer and just beyond the inter-
   section struck an adult pedestrian whom he had observed cross in
   safety from the right side to the center of the street, where his progress
   was barred by traffic moving in the opposite direction, and who then
   suddenly turned and ran back directly into the path of the automobile.
The provision of G. L. (Ter. Ed.) c. 90, § 14, that "Upon approaching a
   pedestrian who is upon the traveled part of any way . . . every
   person operating a motor vehicle shall slow down," was not applicable
   where a pedestrian had crossed in safety the half of the street upon
   which an automobile was travelling and gave no indication that he
   was likely to retrace his steps across its course.

TORT.   Writ dated November 20, 1929.

The action was tried in the Superior Court before *Dona-
hue,* J., who denied a motion by the defendant that a
verdict be ordered in her favor.   There was a verdict for
the plaintiff in the sum of $10,000.   The defendant alleged
an exception.

*A. G. Sleeper,* for the defendant.

*S. L. Segal,* (*M. J. Segal* with him,) for the plaintiff.

DONAHUE, J.   The plaintiff was injured by an automo-
bile driven by the defendant, at the junction of Audubon
Road and Brookline Avenue, Boston, at about 5:30 P.M.

on October 11, 1929. The general locality is described in the bill of exceptions as "a large open area formed by the intersection of Brookline Avenue running easterly and westerly, Audubon Road which crosses Brookline Avenue running northerly and southerly and Boylston Street, which runs into Brookline Avenue from the southeast, making five approaches into the area."

The plaintiff in the company of another young woman had walked in an easterly direction on the southerly sidewalk of Brookline Avenue until they neared that portion of Audubon Road which is at the southerly edge of the area just described. There were lines of automobiles stopped just outside the common area of streets on each of the five approaches thereto and the area itself was at the time free of vehicular traffic. The defendant's automobile was in a line of traffic headed south, and stopped on that part of Audubon Road which is just beyond the northerly edge of the area of intersecting streets and one hundred fifty-five feet distant from the place where the plaintiff and her companion undertook to cross that street. When the plaintiff and her companion arrived at about the center of Audubon Road, which at that point is thirty to thirty-five feet wide from curb to curb, the standing north bound traffic on that street started in motion across the path which the plaintiff and her companion must travel in order to complete their crossing. Her companion remained in the center of the street and was unharmed but the plaintiff, as she testified, turned around to her right, started to run and continued to run on a diagonal course, bearing southerly, until she was struck by the defendant's automobile. She did not see that automobile or any other south bound vehicles which were on that part of the street. In response to the question: "when you started to cross there, you turned to the right and didn't look back to see any traffic coming, did you?" she said, "I glanced around hastily as far as I could." She gave a negative answer to the question: "After you had turned did you at any time look to your then right, that is towards Sears-Roebuck?" which was the name of a building located at the northeast corner

of the area of intersection and opposite the place where the defendant's automobile had been stopped in the line of south bound traffic.

The plaintiff's own testimony furnished no description of the conduct of the defendant in operating her automobile during the critical seconds immediately preceding the collision. The testimony of other witnesses pertaining to that subject is here summarized. There was a police officer stationed in a box in the center of the intersection directing traffic. After the plaintiff and her companion had begun their passage across Audubon Road, south of the area of intersecting streets, the line of south bound traffic which had been stopped on that street at the north of the intersection started in motion in response to a signal from the police officer. By reason of other vehicles turning into Brookline Avenue the defendant's automobile was the first of that line to continue south and through the intersection. When the plaintiff and her companion had reached the center of the street, in obedience to a second signal given by the officer the line of north bound traffic which had stopped south of the intersection started in motion, temporarily barring the further passage of the crossing. When the second signal starting the north bound traffic was given by the police officer, according to his testimony, the defendant's automobile had crossed the car tracks on Brookline Avenue and the defendant testified that her automobile was then forty or forty-five feet from the point where the plaintiff and her companion were in the center of Audubon Road. The defendant saw the plaintiff as she left the curb and during her passage to the center of the street but did not diminish the speed of her automobile until the plaintiff, who was then six feet in front of the automobile, turned suddenly and ran directly into its path. Thereupon the defendant at once applied the brakes to the automobile, which had been proceeding in the center of that half of the street at the rate of twelve to fifteen miles an hour. It was almost at a stop when the center of the front bumper struck the plaintiff and she fell forward, in the direction in which she was running, in front of the automobile.

The fact that the defendant was driving her automobile through the intersection in obedience to a signal of the traffic officer must be given significance in passing upon the propriety of her conduct. Because of that fact she was not justified in refraining from the exercise of any care for the safety of pedestrians but she was entitled to rely to some extent on the expectation that pedestrians would not ordinarily be found in the path of vehicles moving when and where a traffic officer had directed their operators to go. *Donovan* v. *Mutrie*, 265 Mass. 472, 476, 477. The plaintiff and her companion were adults, not children, and there were no manifested abnormalities in their conduct or appearance while walking from the curb to the center of the street which might require special warning from the defendant by sounding her horn. There was then no statutory requirement that a horn be sounded when an automobile was approaching a pedestrian in the street. (See St. 1928, c. 166.) They passed in safety across the course which the defendant's automobile was pursuing in the center of the westerly half of the street. There is nothing in the record which indicates that, in the position in which they were in the center of the street, they were in fact threatened with actual danger from the north bound traffic which was moving in front of them. There was nothing which reasonably would lead an observer in the position of the defendant to anticipate that, when at the center of the street their progress was stayed by the north bound traffic, either of them would suddenly turn and run back across the course which south bound traffic must follow. The defendant could not properly be found negligent for the failure to foresee such unusual and unlikely conduct on the part of the plaintiff. See *Falk* v. *Finkelman*, 268 Mass. 524, 527; *Wall* v. *King*, 280 Mass. 577, 581. The rate of speed of the automobile and the portion of the street where it was operated do not, in the circumstances appearing, afford the basis for a finding that it was being negligently operated up to the time when the plaintiff turned to run back to the curb that she had left. In the few seconds intervening between that time and the collision, so far as the record shows, the defendant

did everything that could be done to bring her automobile to a stop and avoid a collision.

The plaintiff is not aided in the establishment of negligence of the defendant by the statute which provides that "Upon approaching a pedestrian who is upon the traveled part of any way and not upon a sidewalk, every person operating a motor vehicle shall slow down." G. L. (Ter. Ed.) c. 90, § 14 (St. 1928, c. 166). The defendant did slow down when the plaintiff turned and started to run back. Prior to that time the plaintiff had crossed the course which the defendant's automobile was pursuing and continued to pursue and had arrived at the center of the street without giving any indication that she was likely to retrace her steps across the path of oncoming automobiles. In that situation it cannot be said that the automobile was approaching the plaintiff. It was approaching a portion of the common street the plaintiff had already traversed in safety and the plaintiff was not pursuing a course which would intersect that of the defendant. In these circumstances the statute is not applicable. Compare *Engel* v. *Checker Taxi Co.* 275 Mass. 471, 476.

Since the evidence did not warrant a finding that the plaintiff's injuries were caused by negligence of the defendant, her motion for a directed verdict should have been granted. Her exception to the denial thereof must be sustained. Judgment is to be entered for the defendant. (G. L. [Ter. Ed.] c. 231, § 122.) It is

*So ordered.*