FIELDING v. DICKINSON et al.

No. 34046.    April 17, 1951.

*230 P. 2d 466.*

Marvin T. Johnson and Edwin A. Ellinghausen, Tulsa, for plainitff in error.

Disney, Houston & Klein and Pierce, Rucker, Mock, Tabor & Duncan, Tulsa, for defendants in error.

O'NEAL, J. This is an appeal from the judgment entered in the district court of Tulsa county on a directed verdict in favor of defendants in error, defendants below.

The action is one in damages for personal injuries commenced by Paul D. Fielding, plaintiff in error, hereinafter referred to as plaintiff, against defendants in error, O. F. Dickinson and Richard Dickinson, father and son.

Plaintiff in his petition alleged, in substance, that on or about September 19, 1946, defendant O. F. Dickinson was the owner of a Ford automobile and that about 8:10 o'clock p. m., of said day, said automobile was being driven by defendant Richard Dickinson, son of said defendant O. F. Dickinson, for the benefit and use of both defendants, the nature of which is unknown, and was moving south on Boston avenue in the city of Tulsa, Oklahoma, and approaching Second street in said city; that at said time the intersection of Second street and Boston avenue had installed, on the usual corners thereof, traffic lights which automatically designated or directed the movement of the traffic for vehicles, as well as pedestrians, across the same; that at the time, and immediately prior thereto, plaintiff approached said intersection on foot along the sidewalk on the southwest corner of said intersection and there waited for the green signal light before proceeding on foot going east to cross Boston avenue on the south side of said intersection; that after the signal light changed to green plaintiff proceeded on foot to cross Boston avenue, as he had a right to do, and when he had reached a point on Boston avenue about ten to

fifteen feet east of the west sidewalk curb, said defendant Richard Dickinson, operating and driving said automobile, as aforesaid, drove same fast and recklessly in such a manner as to strike plaintiff with some part of the front of said automobile, throwing plaintiff over the radiator and against the right front and side thereof with great force and violence, and causing plaintiff to fall to the street in an unconscious condition, causing said bodily injury and damages thereafter specifically set forth; that plaintiff is unable to state the exact speed at which said automobile was driven at the time and immediately prior to striking him as aforesaid, but that the same was being operated in a wanton and reckless manner, and in total disregard of the rights and safety of others, and especially the plaintiff; that as a result of driving said automobile over, upon and against plaintiff, he suffered great and excruciating bodily pain and anguish; that plaintiff thereby suffered fractures of several bones in his face and forehead, and the left side of his head, and severe concussion of his brain, severe bruises and contusions of his left side and spleen and both legs and arms, and an extreme shock to his nervous system; that plaintiff was thereby rendered unconscious and remained so for several hours; that he was taken to a hospital where he remained several days, and was thereafter confined to his bed for approximately five weeks under the care of physicians and was disabled and unable to work or follow his vocation for approximately nine weeks; that plaintiff had expended on account of his said injuries in hospital bills, doctor bills, ambulance hire and nurse hire (all itemized) the sum of $508.15, and in addition thereto plaintiff lost or had destroyed a Hamilton wrist watch of the value of $72.50, a suit of clothes of the value of $65, and spectacles of the value of $20, or loss of personal property in the total sum of $157.50; that plaintiff was employed at the time of his injury and was earning $107.50 per week. The prayer was for judgment in the sum of $20,665.65. Defendant Richard Dickinson filed a separate answer consisting of a general denial, and a specific denial of negligence on his part, and alleged that the accident was, so far as he was concerned, an unavoidable casualty. He further pleaded contributory negligence on the part of plaintiff in failing to use due care and caution, and in violating certain ordinances of the city of Tulsa, and that he walked into or against defendant's automobile and against the red light, and that plaintiff had been drinking and was under the influence of intoxicating liquor and failed to yield the right of way.

Defendant O. F. Dickinson filed separate verified answer, consisting of a general denial, adopting all the allegations, in defense, of the answer of defendant Richard Dickinson, and specifically denies that Richard Dickinson was his agent or servant at the time and place of the accident, or that he was engaged in any mission for or on behalf of defendant O. F. Dickinson. Plaintiff replied to the separate answers. It appears that defendant Richard Dickinson was, at the time, a minor, and Joe B. Houston was appointed as guardian ad litem and he adopted as his answer the answer theretofore filed by defendant Richard Dickinson. A jury was empaneled to try the issues thus joined, and at the close of plaintiff's evidence, both defendants demurred thereto. The demurrers were overruled and at the close of all the evidence defendants separately demurred to the evidence. These demurrers were each sustained and the court directed the jury to return a verdict for defendants and each of them, which was done, and judgment was entered thereon, and plaintiff, after unsuccessful motion for new trial, appeals.

The order and judgment as to defendant O. F. Dickinson must be affirmed for the reason that plaintiff wholly failed to prove that defendant Richard Dickinson was at the time of

the alleged injury engaged in any mission for or on behalf of his father, defendant O. F. Dickinson. Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65; Schmitt v. Kier, 111 Okla. 23, 238 P. 410; Whitehorn v. Mosier, 119 Okla. 155, 245 P. 553.

As to defendant Richard Dickinson, an entirely different question is presented.

At the outset we must take into consideration the well established and oft-repeated rule that for the purpose of a demurrer to the evidence or a motion for a directed verdict, such demurrer, or motion for a directed verdict, as the case may be, admits every fact which the evidence, in the slightest degree, tends to prove and all inferences and conclusions which can be reasonably and logically drawn therefrom, and if there is a conflict in the evidence, that which is unfavorable to the party against whom the demurrer or motion is directed is to be considered as withdrawn. Carter v. Pinkerton, 194 Okla. 34, 146 P. 2d 842; Carpenter v. Snipes, 203 Okla. 534, 223 P. 2d 761. Under that rule, in case of conflict, all the evidence of defendant unfavorable to plaintiff intended to prove that plaintiff ran into the side of defendant's car; that plaintiff entered and attempted to cross Boston avenue at the place outside the lane set apart for pedestrians, and that plaintiff was under the influence of intoxicating liquors at the time of the injury, must be considered as withdrawn.

Then we have the uncontradicted testimony of the plaintiff which, together with admissions of defendants, that plaintiff, then a resident of the city of Guthrie, went to the city of Tulsa and arrived there about 3 o'clock p. m., on the 19th day of September, 1946; that he registered in at the Hotel Bliss located on the northeast corner of Boston avenue and Second street in the city of Tulsa, and was assigned a room about that time; that a short time thereafter he left his room and went to a drugstore; that in returning to his room while on the elevator, he met a man who was a stranger to him carrying several bottles of Coca-Cola; that plaintiff had some conversation with the stranger to the effect that he was "getting set for something"; that the stranger invited plaintiff to join him, whereupon he went with the stranger and there had one drink composed of Coca-Cola, lemon juice and rum; that he remained there some 15 or 20 minutes and then went directly to his room where he worked in making out some contracts in connection with his business and was so engaged until shortly after 8 o'clock p.m., at which time he noticed that it was raining outside, whereupon he called the desk and inquired about a menu with the view of having his dinner served in his room; that he was informed that the dining room had closed at 8 o'clock; that after having had a telephone conversation with his folks at Norman, he went to the hotel lobby and talked for some 10 or 15 minutes with the clerk and then went out of the hotel at the Second street entrance, walked west to Boston avenue and crossed Second street and walked back east to a cafe near the center of the block where he ate dinner. He then left the cafe and as he came out he heard a newsboy calling or crying his "Tulsa World"; that he walked back west on the south side of Second street to the west side of Boston avenue, and not finding the newsboy, he concluded he needed a little exercise; he then walked south on the east side of Boston avenue and walked back north to Second street on the west side of Boston avenue. When he arrived at the southwest corner of Boston avenue and Second street he waited for the traffic light to change from red to orange and then to green; that a man and woman were there ahead of him and after the signal light changed to green and while the green light was still on, the man and woman ahead of him started east across Boston avenue and plaintiff followed behind them in the lane designated for

pedestrians; that after he had taken three or four steps from the curb something happened, he did not know what. But according to other evidence and admissions of defendant in his answer, what happened was that plaintiff came into contact with the automobile being driven by defendant Richard Dickinson, going south on Boston avenue, and was thrown to the pavement and rendered unconscious for several hours, whereby he received the injuries complained of. When plaintiff was thrown to the pavement he was about 10 or 15 feet east of the curb on the west side of Boston avenue. An ambulance was called and plaintiff was taken to the hospital. According to plaintiff's testimony he did not regain consciousness until the next morning. The automobile driven by defendant Richard Dickinson approached the intersection of Boston avenue and Second street on Boston avenue from the north. As it approached said intersection it was being driven at a speed of about 20 or 25 miles per hour. As it entered the intersection, and while crossing Second street, it was driven at a speed of about 15 miles per hour. In Gilles v. Leas, 282 Pa. 318, 127 A. 774, it is said:

"We have held over and over again that at street crossings drivers must be exceedingly vigilant to have their cars under such control that they may stop at the slightest sign of danger. If they do not, and an accident results, they are liable in damages for its consequences. In the crowded condition of our public thoroughfares, traffic officers cannot always clear the intersecting ways before giving a signal for vehicular traffic to move on the street that is being crossed by pedestrians. The responsibility rests with the automobile drivers to so handle their cars as not to injure those already in the street."

And:

"Of course, the mere fact that a person is struck by an automobile does not raise a presumption of negligence of the driver (Flanigan v. McLean, 267 Pa. 553, 556, 110 A. 370; King v. Brillhart, 271 Pa. 301, 304, 114 A. 515), but

where, as here, a pedestrian is crossing a highway at intersecting streets in the customary manner (Eckert v. Merchants' Ship Bldg. Corp., 280 Pa. 340, 344, 124 A. 477; Banks v. Shoemaker & Co., 260 Pa. 280, 103 A. 734) and there is no obstruction to the driver's view of the crossing, nor to the pedestrian's, it becomes the duty of the driver to be vigilant and have his car under such control that he can stop it if objects appear in his path."

Therein it is also said:

"If there is any superior right to use the highway under circumstances such as described in this case, it is with the pedestrian who is in the cartway. It is quite clear the traffic should not run him down when he is in full view. And when it does, even at a moderate or slow rate of speed, the driver lacks the control of his car necessary under the circumstances, and is chargeable with negligence. King v. Brillhart, supra."

In Riddel v. Lyon, 124 Wash. 146, 213 P. 487, 37 A.L.R. 486, it was held:

"A pedestrian who enters a street intersection to cross a street under direction of the traffic officer has the right of way over vehicles on the street which he is crossing until he reaches the other side of the street, and is not bound to employ continuous and extra observation to avoid crossing vehicles, although before he reaches such other side the semaphore is changed so as to direct traffic on the intersecting street to proceed, and the ordinances provide that at street intersections pedestrians shall cross streets with released traffic and not otherwise, and that pedestrians shall look out for vehicles."

In Quaker City Cab Co. v. Fixter (C.C.A.) 4 F. 2d 327, it is said:

"As to the relative rights of vehicles and pedestrians, vehicles have the right of way on the portion of the street set aside for them, but at crossings, all drivers, particularly of motor vehicles, must be highly vigilant, and maintain such control of their vehicles that they can stop their cars on the shortest possible notice. McClung v. Pennsylvania Taxi Cab Co., 252 Pa. 478, 97 A. 694;

Yeager v. Gately & Fitzgerald, 262 Pa. 466, 106 A. 76; Anderson v. Wood, 264 Pa. 98, 107 A. 658. If the deceased did not start to cross Broad street against the traffic signals, and had without negligence committed himself to the crossing, he had the superior right of way against a vehicle thereafter approaching."

In Griffith v. Slaybaugh, 29 F. 2d 437, it is said:

"At controlled crossing, pedestrians have the right of way along with other traffic moving in observance with the traffic signals. Plaintiffs entered the crossing while the green signal light was displayed, and having committed themselves to the crossing, they had the right of way until they could reach the opposite curb."

In the instant case, the physical facts —the manner in which defendant's car and plaintiff's body came into collision, the place where same occurred—all tend to prove defendant's negligence and that such negligence was the proximate cause of plaintiff's injuries. Di Denti v. Carrell, 164 Wash. 79, 1 P. 2d 901. Under the record, showing the testimony in the case somewhat conflicting, it was the duty of the trial court to submit the case to the jury as between plaintiff and defendant Richard Dickinson. It is the province of the jury to reconcile conflicting statements and determine the facts and base a verdict thereon.

Judgment affirmed as to defendant O. F. Dickinson.

Reversed and remanded as to defendant Richard Dickinson, with directions to grant plaintiff a new trial.