## Frisina *v.* Dailey, Appellant.

Argued March 20, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*W. Davis Graham,* for appellant.

*B. Albert Bertocchi,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 20, 1959:

On December 27, 1957, at about 6:40 p.m., John Frisina, 70 years of age, was crossing 14th Street in Ford City, when he was struck by an automobile owned and operated by Lawrence H. Dailey, sustaining injuries from which he died the following day. His widow, Jennie Frisina, administratrix of the estate of the decedent and as trustee ad litem for all persons entitled to recover damages, brought a suit of trespass under the Death and Survival Acts against Lawrence Dailey, recovering money verdicts which are here not in dispute.

The defendant asks this Court to enter judgment n.o.v., arguing that the plaintiff failed to make out a case of negligence against him and that in any event the decedent was guilty of contributory negligence. Looking at the accident as it unfolded in narrative in the courtroom, we conclude that the jury was justified in finding that Dailey was negligent and that Frisina could not be declared guilty of contributory negligence as a matter of law.[1]

---

[1] *Borits v. Tarapchek,* 338 Pa. 289.

Fourteenth Street, on which the fatal accident occurred, runs east and west and is 30 feet wide. It is intersected by Fourth Avenue, running north and south and is 38 feet wide. Dailey, the defendant, was driving his Chevrolet Sedan westwardly on Fourteenth Street. The pedestrian, Frisina, was crossing from the southerly curb to the northerly curb of Fourteenth Street. He had practically completed the passage, being only 2½ feet from the northerly curb of Fourteenth Street when Dailey's car violently collided with him. The intersection was well lighted and the defendant's headlights were burning. Yet he testified that he did not see Frisina at any time: "Q. I believe you testified that you looked in all directions; is that correct? A. That is correct. Q. And you didn't see Mr. Frisina anywhere? A. No, sir. Q. When was the first time you saw Mr. Frisina? A. When I got out of the car and walked to the rear of the car and looked down. Q. You didn't know what you had struck? A. No. sir. . . . Q. You have no recollection of seeing a body? A. No sir. Q. Flying above the hood of your car and coming down on the fender? A. No sir."

A motorist, who says that he did not see a pedestrian so directly in his path that he engages him head-on, places himself in the dock of accountability from which he is not released until he satisfactorily explains why his eyesight failed to tell him what was clearly visible, why his muscular reactions failed to respond to what should have been an instinctive urge to avoid doing injury to others, and what caused the lapse in the unceasing vigilance required and expected of every motorist.[2] From the above quoted testimony it is obvious that Dailey did not even begin to make any kind of an explanation as to why the figure of a man, vividly silhouetted before him on an illuminated street, did

---

[2] *Smith v. Wistar*, 327 Pa. 419.

not register on his retina and on his consciousness as a careful motorist.

A witness by the name of Eugene Waugaman testified that he saw the defendant stop his car at the Stop, Through Traffic sign at the northeastern corner of the intersection, and then start forward again. At or about the same time he said he saw Frisina bent on making his way across Fourteenth Street. The defendant argues from this testimony that Frisina walked into an obvious danger and was therefore guilty of legal contributory negligence. However, Waugaman's testimony was not confined to the statement just indicated. He also said that he did not see Frisina before he started across Fourteenth Street. "Q. Did you observe him standing on the corner for any period of time, while he was there? A. No; I didn't see him on the corner. Q. You didn't see him until he started to walk across? A. Across the street."

Where seeming inconsistencies occur in a witness's testimony it is for the jury to consider all the evidence in the light of all the probabilities, as well as concatenation and sequence of events, and determine in the final analysis what really occurred and who was responsible for what occurred.

A strange thing about the appellant's version of the accident is that if it happened the way he argues it happened, it never could have happened at all. The defendant testified that he moved across the intersection at from 10 to 15 miles per hour. Frisina obviously, especially as a seventy-year-old man, could not have walked faster than perhaps 4 miles per hour. It stands to reason that, with this disparity in speed of the two bodies, the car would have cleared the crossing long before the septuagenarian pedestrian arrived at the point where a speedy runner would have been caught in the bumper and fender of an oncoming car.

A review of the case quite clearly demonstrates that keeping in mind the speeds involved, the measurements of the thoroughfare embraced in the accident, the bodies in movement, and the indisputability of the point of collision, the jury would experience no difficulty in concluding that Frisina left the south curb of Fourteenth Street *before* Dailey started forward with his Chevrolet at the eastern curb line of Fourth Avenue. This being so, the finding was irresistable that Dailey was guilty of negligence in running down a man whom, had he been vigilant, he could not have avoided seeing.[3]

A pedestrian who has observed all the rules of the highway and is traversing a street at a regular crossing has the right to stop traffic until he passes by in safety, even as Moses held back the Red Sea.

To say that a pedestrian may not cross a street merely because an automobile may be in view is equivalent to saying that the machine has rights superior to those of a human being. The converse is true. Everything else being equal, the automobile must give way to the prerogatives of the foot passenger who does not wear a steel coat and is not equipped with bumpers and fenders to protect him in any conflict with his four-wheeled potential adversary.

Most every pedestrian must at some time have had the experience of seeking to cross a street with a green light beckoning him on but is prevented from crossing because of a stream of cars passing in front of him from the right or left. In such a situation, the pedestrian, exercising due care, has the indisputable right of way.

Waugaman testified of Frisina that: "It seemed to be he was looking straight ahead, I mean, in the di-

---

[3] *Michener v. Lewis*, 314 Pa. 156.

rection he was going." From this the appellant argues that Frisina committed contributory negligence. It is difficult to follow this argument. The most natural, most normal, and most prudent thing a man can and should do is to look in the direction in which he is traveling. This does not mean that he cannot, from the corner of his eye, also see what is to be seen on his immediate sides. The miracle and blessing of sight gives us a sweep of 180° field of vision so that, even moving forward, one may note objects in immediate proximity on either flank. Thus, there is no reason to assume that Frisina was not aware of the car's presence, but it does not follow that that awareness could save him from the unexpected and uncalled for onslaught of the darting vehicle. Moreover, in this lawsuit, the plaintiff had the advantage of the legal presumption that Frisina exercised due care in crossing the street.[4] The physical facts, combined to this presumption of due care, justified the jury in concluding that before Frisina committed himself to the crossing, he noted that the automobile had stopped at the Stop, Through Traffic sign, and that Frisina could logically believe that it would not run him down as he proceeded to cross at the point where he had every right to cross.

Judgment affirmed.

---

[4] *Michener v. Lewis*, 314 Pa. 156.