FIRST NORTHWESTERN TRUST CO. OF SOUTH DAKOTA, Guardian Ad Litem for Patrick C. Schaub, A Minor, Plaintiff and Appellant,

v.

Doreen G. SCHNABLE, Defendant and Appellee.

No. 13842.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1983.

Decided May 18, 1983.

Patrick J. Kane, Sioux Falls, and C.W. Hyde, and B. Elizabeth Ganje, Aberdeen, for plaintiff and appellant.

William A. Hackett of Austin, Hinderaker & Hackett, Watertown, for defendant and appellee.

FOSHEIM, Chief Justice.

First Northwestern Trust Company, as Guardian Ad Litem for Patrick Schaub (plaintiff), sued Doreen Schnable (defendant) for damages suffered when he was

struck by defendant's car while he was crossing a street. The trial to the court was bifurcated. The issue of liability was heard before the issue of damages. The court entered judgment for defendant on the issue of liability. Plaintiff appeals. We affirm.

The trial court found that the accident occurred on April 23, 1978, at about 8:45 p.m., at the intersection of Sixth Avenue Southeast and South State Street in Aberdeen, South Dakota. Sixth Avenue Southeast runs east and west. It is a state and federal highway, known as U.S. Highway 12, and is the second busiest street in South Dakota. The intersection was controlled by traffic lights timed mechanically so that traffic moving east and west had a green light for 30 seconds, a yellow light for 3 seconds, and a red light for 17 seconds. The traffic moving north and south on South State Street had a green light for 14 seconds, a yellow light for 3 seconds, and a red light for 33 seconds.

There are two lanes on the north side of Sixth Avenue Southeast for west bound traffic, two on the south side of the avenue for east bound traffic, and a center turning lane. The paving from curb to curb on Sixth Avenue Southeast at the intersection is about 64 feet wide. All lanes are of approximately equal width. A service station was on the southeast corner of the intersection. At the time of the accident there were three vehicles stopped on Sixth Avenue Southeast at the intersection for a red light. David Brewer, heading west, was stopped in his car in the inside lane for west bound traffic. Brewer's car was stopped next to the crosswalk at the stop bar. David McGinnis, heading east, was stopped in the inside lane for east bound traffic. McGinnis was stopped next to the crosswalk at the stop bar. Directly behind him, James Rohl was also waiting in his car.

There had been some rain that evening. The sidewalks and pavement were wet and a light mist was falling. It was dark. Street and car lights were on. The lights were also on at the service station. This combination of lights made the intersection lighting fairly good. Brewer, McGinnis, and Rohl could see plaintiff as he crossed the intersection.

Plaintiff was 8 years, 8 months old and in the third grade at the time of the accident. His parents and teachers had taught him about the dangers of vehicle traffic, the importance of watching for a safe passage across streets, and pedestrian safety at intersections controlled by traffic lights. Plaintiff understood stop and go signs. He also knew that a pedestrian should proceed across the street only when the street is clear and the pedestrian has a green light. For approximately a year prior to the accident, he had a paper route in Aberdeen in an area which did not have an intersection controlled by traffic lights. However, plaintiff was familiar with the intersection of Sixth Avenue Southeast and South State Street. He knew that Sixth Avenue Southeast was a busy street requiring caution. At the time of this unfortunate accident, the lad was dressed in clothing most unfavorable to visibility: a dark blue jacket and grey-green, almost black, corduroy trousers.

Immediately prior to the accident, plaintiff approached the intersection from the south on the east side of South State Street along the area of the service station. Plaintiff and defendant approached the intersection simultaneously. Defendant was traveling west in her car on Sixth Avenue Southeast in the north, outside lane, for westbound traffic. Defendant's headlights were on, her windshield wipers were operating, and her windshield was clear. Defendant was familiar with the intersection. She knew it was busy, that Aberdeen's largest grocery store was located a half a block north, and that children frequented the area. When defendant was approximately 95 to 100 feet east of the intersection, the traffic light controlling her entrance into the intersection changed from red to green. Defendant continued toward the intersection at approximately 25 miles per hour, which was within the speed limit. The Brewer, McGinnis, and Rohl cars did not move when the light changed because they could see plaintiff in the intersection.

Plaintiff entered the intersection on a yellow light while running or moving at a quick jog. He continued at the same pace until he was about 12 feet into the intersection, at which point the light turned red. From that point, plaintiff ran as fast as he could. Brewer's car obstructed the view between plaintiff and defendant so that neither was aware of the other. Plaintiff was in the crosswalk in the north, outside lane, for west bound traffic when he was struck by defendant's car. One witness testified the point of impact was at the left front headlight, another witness that there was blood and hair near the right front headlight immediately after the accident. Defendant had the green light when her car struck plaintiff.

The trial court also found that plaintiff had a duty not to proceed against the light and that defendant had a duty to keep her car under control. The trial court found that both plaintiff and defendant had a duty to keep a proper lookout.

From these findings the trial court concluded that defendant was guilty of slight negligence which was not the proximate cause of the accident; and that plaintiff was guilty of more than slight negligence, which was the proximate cause of the accident, barring his recovery.[1]

Plaintiff contends he was not negligent. He argues the court clearly erred in finding he entered the intersection on a yellow light and that it applied the wrong standard of care to his actions.[2]

Four witnesses testified about the color of the light when plaintiff stepped into the intersection.

1. Plaintiff testified that the light was green.

2. Rohl testified on direct examination that he could not remember the color of the lights at any time. On cross-examination he admitted that he had previously told defense counsel the light was yellow when plaintiff entered the intersection.

3. Brewer testified that the light was green when plaintiff stepped into the intersection but that he did not know where plaintiff was when the light turned yellow. He placed plaintiff one-fifth way through the intersection when plaintiff saw the light was red.

4. McGinnis testified that just before plaintiff entered the intersection, plaintiff looked at the light and it was green but as plaintiff stepped into the intersection the light turned yellow. He testified that plaintiff was approximately half way across the intersection when the light turned red. (McGinnis' deposition testimony was introduced at trial. He testified from a street diagram with 4 lanes instead of five lanes, which the street actually had.)

In our review of the evidence, we must bear in mind that resolution of the negligence issue does not rest on whether this court would have made the same findings as did the trial court. We can disturb them only if our review of the evidence leaves us with a definite and firm conviction that the trial court made a mistake. *Johnson v. Jongeling,* 328 N.W.2d 275 (S.D. 1983). Applying this standard, we conclude the trial court's finding that plaintiff entered the intersection on a yellow light is not clearly erroneous.

---

1. SDCL 20–9–2: In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

2. In addition to these arguments, plaintiff claims the trial court's conclusion that the light was yellow when plaintiff entered the intersection was based on figures from a case cited in plaintiff's trial brief, which were not in evidence. The trial court's comments from the bench at the close of the evidence referred to these figures. However, they were not mentioned in the trial court's findings. They therefore are of no consequence. *Jones v. Jones,* 334 N.W.2d 492 (S.D.1983).

Plaintiff also argues that the trial court's conclusion that plaintiff was negligent was based solely on its finding that plaintiff entered the intersection on a yellow light, which plaintiff contends is a violation of SDCL 32–27–2.[3] Plaintiff argues that even if he entered the intersection on a yellow light, he cannot be held negligent as a matter of law. It is true that a minor's violation of a statute or ordinance generally does not constitute negligence per se. *Alley v. Siepman*, 87 S.D. 670, 214 N.W.2d 7 (1974). However, the trial court's findings and conclusions do not refer to SDCL 32–27–2 or indicate that its conclusion of plaintiff's negligence was based solely on the color of the light when he entered the intersection. The trial court's findings clearly reveal a careful consideration and weighing of many factors.

Plaintiff next argues that even if the trial court correctly concluded he was negligent, it erred in concluding that his negligence was more than slight. We empathize with the trial judge's comment that he wished a jury had tried this case. He conceded the issue of liability was "extremely close." We agree. It frequently is when a minor is involved.

> The objective standard of the reasonable prudent person does not apply to a minor, but rather a special (subjective) standard of care is used which takes into account his age, intelligence, experience and capacity.... 'There is something of an individual standard: the capacity of the particular child to appreciate the risk and form a reasonable judgment must be taken into account.'

*Id.* 214 N.W.2d at 10 (citations omitted).

█ The thought of a car hitting a child naturally evokes anguish and sympathy. However, juries are instructed not to allow such considerations to affect their verdicts. No less can be demanded when the court is the trier of fact. Although 8 years old, plaintiff had a year's experience, through

his paper route, in getting himself around town. He was taught safe pedestrian habits at home and at school. He knew the significance of a red, green and yellow light. Yet on a dark and rainy night he ran as fast as he could, against the light, across the busiest street in town. Plaintiff gave himself no margin for error. Even if he had chanced to spy defendant's car as he cleared Brewer's, at the speed he was moving it is extremely doubtful he could have stopped in time to avoid being hit. We accordingly concur with the trial court's decision that plaintiff's negligence was more than slight and that it was the proximate cause of the accident. *Haase v. Willers Truck Service*, 72 S.D. 353, 34 N.W.2d 313 (1948).

Plaintiff's final argument is that the trial court erred in not applying the doctrine of last clear chance to this case.

> [T]he last clear chance doctrine does not apply in a situation where the pedestrian was 'oblivious to peril' and the driver of the automobile does not actually discover and see the pedestrian 'in time' to do anything to avoid hitting pedestrian. *Miller v. Sioux Falls Traction System*, 1921, 44 S.D. 405, 184 N.W. 233; *Haase v. Willers Truck Service*, 1948, 72 S.D. 353, 34 N.W.2d 313.

*Ford v. Hochstetter*, 85 S.D. 4, 176 N.W.2d 501, 504 (1970); *Hanson v. Beesley*, 292 N.W.2d 804 (S.D.1980).

█ The trial court found, upon uncontradicted evidence, that "Defendant at no time saw the minor Plaintiff prior to the accident." Plaintiff does not claim this finding is clearly erroneous. Having found that fact, the trial court properly declined to apply the last clear chance doctrine. We must abide by our earlier admonition: "[o]ne may not unnecessarily place and maintain oneself in such a dangerous position and then require others who failed to

---

**3.** SDCL 32–27–2 reads: At intersections where traffic is controlled by traffic control signals or police officers, drivers of vehicles, including those making turns, shall yield the right of way to pedestrians crossing or those who have started to cross the roadway on a "green" or "go" signal, and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a "green" or "go" signal.

discover his peril to respond in damages." *Haase,* 34 N.W.2d at 317 (citations omitted).

Judgment affirmed.

WOLLMAN and MORGAN, JJ., concur.

DUNN and HENDERSON, JJ., dissent.

DUNN, Justice (dissenting).

I am convinced that this case should have been decided under the comparative negligence doctrine. SDCL 20–9–2.

Contrary to the majority opinion, I believe the trial court erred when it found appellee's negligence in this case was only slight. Appellee entered this busy intersection on the blind side of an automobile which was stopped at the intersection waiting for the boy to safely cross. Appellee was traveling at a speed of twenty-nine miles per hour on a dark and rainy night. While this may have been within the legal speed limit, I do not view it to be a safe and reasonable speed of travel under the circumstances then existing. I am convinced that the appellee was guilty of negligence more than slight when she barrelled through this intersection on that fateful night. Any reasonable prudent driver would have at least hesitated at this crossing to determine why the autos stopped at the intersection had not immediately proceeded on the green light.

I am also convinced that while the eight-year-old boy may have been negligent in placing himself in this position; his negligence, considering his age and experience, was slight in comparison with that of the defendant. By all the witnesses' testimony, the boy entered the intersection on a green light or, at worst, as the light was turning from green to yellow. He found himself trapped in a wide intersection with a half to two-thirds of the intersection to cross when the light turned red. He then did what any reasonable eight-year-old would do, he attempted to run for safety. Perhaps an adult would have had the experience and the presence of mind to stop in the comparative safety provided by the cars that were stopped and waiting for him to cross. However, his choice of extricating himself, considering his age and experience, was not contributory negligence which should bar all recovery in this case.

Accordingly, I would reverse the decision and remand for a finding of damages under the comparative negligence statute.

HENDERSON, Justice (dissenting).

A paperboy. He is an entrepreneur, a future businessman, a son, a representative of youth's flower, a delight to customers, a modern-day Gunga Din for that daily miracle we call the newspaper, but above all else, he is this country's future filled with hopes and dreams. This eight-year-old boy's dreams were dashed to earth by a negligent motorist who failed to yield the right-of-way unto him as he crossed, in a crosswalk, in the second busiest intersection in the State of South Dakota. Hereby, I uphold his cause.

Recently, I have twice expressed my anguish at the treatment of this Court regarding pedestrians. First, to an elderly lady in an intersection at Yankton in *American State Bank, Trust Dept., Etc. v. Mayer,* 326 N.W.2d 110 (S.D.1982) (Henderson, J., concurring specially in part, dissenting in part). Secondly, to an elderly lady with a cane struck by an automobile in a Watertown parking lot in *Johnson v. Jongeling,* 328 N.W.2d 275 (S.D.1983) (Henderson, J., dissenting). Now, I express my disagreement with the treatment of this *Aberdeen American News* paperboy who was struck by a 19-year-old driver in Aberdeen and hurled to the pavement with resulting serious, permanent injuries. In *American State Bank,* 326 N.W.2d at 113, footnote, I expressed: "And, in South Dakota, where shall we place our values? On inanimate objects or human beings?" I indicated in *Johnson v. Jongeling,* 328 N.W.2d 275, that the inanimate object, comprised largely of cold steel and oblivious to pain, should yield to the human being housed in bone and flesh.

This little newspaper boy was attempting to cross some five lanes, two lanes for westbound traffic, 2 lanes for eastbound traffic, and a middle turning lane. Warren Schu-

macher, the Aberdeen Traffic Control supervisor, testified that the overhead lights were set to allow pedestrians a scant 14 seconds of green light to cross the intersection. This paperboy had been out collecting money for his paper route and had a rendezvous at a grocery store to meet his brother who was also an enterprising young lad in the paper business. Before reaching the curb, he looked up at the traffic light, noting that it was green. The evidence is clear that before stepping off the curb, he again glanced at the light and proceeded into the intersection for it was still green. When well into the intersection, he looked at the light again and saw that it had changed to yellow. Running as fast as he could to reach the other curb, this eight-year-old boy's dreams, hopes, and the rendezvous with his brother came to a crashing halt. For, indeed, the motorist bore down upon him and sent his little body flying to the street. The motorist paid no heed to three cars stopped at the intersection awaiting the boy's passage at the time of the collision.

I am convinced that factually, and in the law, the motorist failed to keep a proper lookout as she entered the intersection. As the evidence in the settled record reveals, the intersection was exceptionally well lit and the paperboy wore a jacket with five lightly colored narrow strips along the top of the sleeves and the shoulders. The paperboy testified he entered the intersection briskly walking, not running or jogging. David Brewer was one of the motorists waiting at the intersection when the paperboy was struck. Mr. Brewer testified the paperboy entered the crosswalk on a green light. Captain David McGinnis was also stopped at the intersection; he likewise testified the paperboy had a green light just as he entered the crosswalk. James Rohl, another motorist who was stopped and waiting at the intersection, testified that his car was stopped for a red light when the paperboy entered the intersection.

SDCL 32–27–2 provides:

At intersections where traffic is controlled by traffic control signals or police officers, drivers of vehicles, including those making turns, *shall yield the right of way to pedestrians crossing* or those who have started to cross the roadway on a "green" or "go" signal, and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a "green" or "go" signal. (Emphasis supplied.)

It is important to note that SDCL 32–27–2 is disjunctive; it requires motorists to yield to (1) "pedestrians crossing," *or* (2) "those who have started to cross the roadway on a 'green' or 'go' signal." This paperboy fits in either category. In law, he had the right-of-way.

In a telling statement, the motorist at deposition was questioned about the stopped traffic:

Q. How far back were you from the intersection when you saw the car in the inside lane?

A. Well, I wasn't that interested in the car. I seen the car, I noticed that the light was green, that I could continue through the intersection.

The time has come in this state for the message to ring out loud and clear that the motorist approaching an intersection is responsible for more than merely the color of the stoplights: He or she has a *duty* to yield to pedestrians trapped in a crosswalk. The color of traffic control signals is not the only rule of the road; it is but one of them. This motorist *knew* children frequented this busy intersection, as she testified at trial: "I always see children on that intersection." In *Doyen v. Lamb*, 74 S.D. 126, 129–30, 49 N.W.2d 382, 383–4 (1951), we held:

What is reasonable or ordinary care varies depending upon the circumstances of each case. A higher degree of care is required where children are involved or in case of adults where age or physical infirmity is present. As stated in 2 Blashfield Cyclopedia of Automobile Law and Practice, § 1497, "A motorist, in approaching children on the street, must consider their tenderness of age and the probability of their making sudden and erratic movements peculiar to such age as factors

calling for greater caution than would be necessary on the discovery of adults in the same situation. He is not justified in assuming that a child will exercise the same degree of care for his safety as an adult would under the circumstances, nor is he justified in presuming that a child near highway will remain in place of safety. This high degree of care required of motorists is based on the well-known fact that children of tender age act upon intuition and impulse and are apt to do most unexpected things, particularly where there are large numbers of children present in or near the street and there is probability that they are in a state of excitement."

*See also, Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 141 So.2d 226 (1962). Not only are children given to sudden impulsive movements, but because of their small stature, their vision is not comparable to adults. They do not have the vantage point of adults. Thus, they are at a perilous disadvantage.

In a strikingly similar case to the one at bar, the Court in *Griffith v. Slaybaugh,* 58 App.D.C. 237, 239, 29 F.2d 437, 439 (1928),* with durable reasoning held:

The condition of traffic in our crowded streets is such that travel by pedestrians is at best difficult and dangerous. If their absolute right to enter upon a crossing when the signal permits it is not sustained, they would be almost without protection. Entering under this invitation, they cannot be charged with contributory negligence, if the signal switches when they are in the street. Caught in this position, the obligation rests upon the drivers of automobiles, not only to observe the situation, but to wait until the crossing is clear. . . . It is the duty of drivers of machines to exercise the greatest vigilance and care under such circumstances, not only to have their machines under control, but to stop and wait until pedestrians have had an oppor-

tunity to clear the crossing. Failure to observe these precautions constitutes negligence on the part of the driver, which in case of accident is chargeable against him.

Likewise, in *Paquin v. Boston & Taunton Transp. Co.,* 69 R.I. 176, 32 A.2d 153 (1943), where a truck proceeded through on a green light and struck a pedestrian although a car was stopped waiting for pedestrians to clear, the Rhode Island Court held that by the exercise of due care the truck driver could have reasonably ascertained pedestrians were present. *See also, Werker v. McGrain,* 315 Mich. 287, 24 N.W.2d 111 (1946). It is to be remembered that in the case at bar, three cars were stopped at the intersection waiting and this motorist-defendant, by her own testimony, knowing that she always saw children on that intersection, owed a duty to proceed with the highest caution.

As the Washington Supreme Court has held in *Lanegan v. Crauford,* 49 Wash.2d 562, 304 P.2d 953 (1956), a green light, in reality, is not a command to go, but rather is only a limited permission to pass, having due regard for those already in the intersection. Beautiful analysis. Superb language. A great assemblage of case law holds a driver entering an intersection on a favorable signal may *not* rely entirely thereon, but must anticipate and allow pedestrians time to clear the intersection. *See Holeman v. Smallwood,* 89 Ill.App.3d 796, 45 Ill.Dec. 5, 412 N.E.2d 41 (1980); *Huston v. Chicago Transit Authority,* 35 Ill.App.3d 428, 342 N.E.2d 190 (1976); *Fox v. Calhoun,* 34 Ill.App.3d 336, 340 N.E.2d 125 (1975); *Duke v. Meisky,* 12 N.C.App. 329, 183 S.E.2d 292 (1971); *Schmitt v. Henderson,* 1 Cal.3d 460, 82 Cal.Rptr. 502, 462 P.2d 30 (1969); *Hall v. Marshall,* 394 F.2d 790 (C.A.6 Tenn. 1968); *Applebaum v. Hersh,* 26 App.Div.2d 58, 270 N.Y.S.2d 805 (1966); *Vinet v. Checker Cab Co.,* 140 So.2d 252 (La.App.1962); *Gray v. Felts,* 241 Miss. 599, 131 So.2d 454 (1961); *Arney v. Bogstad,* 199 Va. 460, 100 S.E.2d 749 (1957); *Overy v. St. Louis Public*

---

* The defendant in *Griffith* had a green light and an automobile on his left was stopped allowing pedestrians to clear the crosswalk, a pedestrian walked out from in front of the stopped car and was struck.

*Service Co.,* 295 S.W.2d 23 (Mo.1956); *Engel v. Davis,* 256 Ala. 661, 57 So.2d 76 (1952); *Knuth v. Murphy,* 237 Minn. 225, 54 N.W.2d 771 (1952); *Fielding v. Dickinson,* 204 Okl. 372, 230 P.2d 466 (1951); *Petersen v. General Rug & Carpet Cleaners,* 333 Ill.App. 47, 77 N.E.2d 58 (1947); *Ward v. Bowles,* 228 N.C. 273, 45 S.E.2d 354 (1947); *Werker v. McGrain,* 315 Mich. 287, 24 N.W.2d 111 (1946); *Kerr v. Floyd,* 25 Wash.2d 135, 169 P.2d 349 (1946); *Hammond v. Morris,* 147 Neb. 600, 24 N.W.2d 633 (1946); *Payne's Adm'r v. Stone,* 299 Ky. 704, 187 S.W.2d 267 (1945); *Moran v. Dumas,* 91 N.H. 336, 18 A.2d 763 (1941); *Elder v. Rutledge,* 217 Ind. 459, 27 N.E.2d 358 (1940); *Coffey v. Slingerland,* 9 Cal.App.2d 731, 50 P.2d 830 (1935); *Stafford v. Jones,* 292 Mass. 489, 198 N.E. 745 (1935); *Ferguson v. Charis,* 314 Pa. 164, 170 A. 131 (1934); *Walmer-Roberts v. Hennessey,* 191 Iowa 86, 181 N.W. 798 (1921). Case law, you see, for every decade.

In reviewing the settled record herein, I cannot help but to reflect on the motorist's statement in *Johnson v. Jongeling,* 328 N.W.2d at 277: "[B]ut I wasn't looking for a pedestrian I was more or less looking for cars . . . ." The majority opinion in *Johnson v. Jongeling* approved that type of negligent conduct. Now, this majority opinion reaffirms the impropriety of neglecting to look for pedestrians. This motorist-defendant concentrated on her observation of the traffic light and totally disregarded other rules of the road. This Court should not countenance an implicit message to motorists that they can disregard pedestrians and their safety, for it is our state law that these motorists shall yield the right-of-way to pedestrians crossing at an intersection. SDCL 32–27–2. For the frailty of the human body is paramount over the steely substance of the automobile. As I stated in my dissent in *American State Bank,* 326 N.W.2d at 113, footnote: "If a citizen is walking in a crosswalk, it behooves the automobile driver to *look out, beware, drive carefully, and yield* the right-of-way." (Emphasis added.) I reaffirm that declaration.

The paperboy had to make a split-second decision when the light changed. This decision was triggered by the scanty 14 seconds of green light which he was afforded to cross the intersection. This decision to continue through the intersection was not negligence. He saw no peril in front of him. Three cars were stopped and waiting for him to clear the intersection. His body was not tall enough for his eyes to see another automobile approaching the intersection. He owed no duty to anticipate that an approaching vehicle would not yield the right-of-way unto him. No, the little paperboy was not guilty of contributory negligence. He was guilty only of being a boy and of running as fast as his little legs would carry him, once he discovered that the green light had turned to yellow. Legally, the trial court found him guilty of negligence more than slight which was the alleged proximate cause of collision. I respectfully disagree. The trial court found the defendant guilty of slight negligence which was not the alleged proximate cause of the accident. I respectfully disagree.

I have a definite and firm conviction that a mistake in law was made at the trial court level. Under the clearly erroneous standard set forth in *Matter of Estate of Nelson,* 330 N.W.2d 151 (S.D.1983), I would reverse and remand. I would adorn the paperboy with appellate grace for "[a] pedestrian who has observed all the rules of the highway and is traversing a street at a regular crossing has the right to stop traffic until he passes by in safety, even as Moses held back the Red Sea." *Frisina v. Dailey,* 395 Pa. 280, 284, 150 A.2d 348, 350 (1959). And it is to this thinking that I subscribe.