**AMERICAN STATE BANK, TRUST DE-PARTMENT, GUARDIAN OF Ann HIGBEE, Plaintiff and Appellant,**

v.

**Lynette A. List MAYER, Defendant and Appellee.**

**No. 13324.**

Supreme Court of South Dakota.

Argued Oct. 21, 1981.

Decided Nov. 10, 1982.

Rehearing Denied Dec. 17, 1982.

Steven M. Johnson of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellant.

James E. Doyle of Doyle, Bierle, Porter & Kennedy, Yankton, for defendant and appellee.

MARTIN, Circuit Judge.

American State Bank (appellant), as Guardian of the Estate of Ann Higbee, brought this action to recover for injuries that Ann Higbee suffered after she was struck by an automobile driven by appellee, Lynette List Mayer. The jury rendered a verdict in favor of appellee and judgment was entered accordingly. Appellant's motions for a judgment notwithstanding the verdict and a new trial were denied. Appellant appeals from the judgment and the adverse rulings on said motions. We reverse and remand for a new trial on all the issues.

Ann Higbee, a seventy-eight year old woman, was struck by appellee's automobile at 8:10 p.m. on September 29, 1979, in

Yankton, South Dakota, as she was walking in an unmarked cross-walk at the end of a block. Mrs. Higbee sustained permanent brain damage, causing her to be incompetent to testify at the trial. She also suffered a broken hip and various bruises and contusions.

Uncontroverted testimony indicated that Mrs. Higbee had looked in both directions before crossing the street; she walked in a normal manner although looking downward at all times; and, had crossed about one-half of the two southbound lanes of the street when she was struck. The weather at the time of the accident was good and nothing impaired the view of either appellee or Mrs. Higbee at the time of the accident. Appellee admitted that she did not see Mrs. Higbee until five feet before impact; this was not soon enough to sound her horn in warning. The police officer who investigated the accident testified that appellee's vehicle left no skidmarks, although other testimony indicated that appellee had applied her brakes sometime prior to the impact.

■ A blood alcohol content test was administered to Mrs. Higbee three hours after the accident pursuant to a request by the police department. The test indicated a .08 blood alcohol content level. Appellee offered expert testimony indicating that Mrs. Higbee's blood alcohol content level was .125 at the time of the accident. Ap-

pellant objected to the introduction of the blood test result on the ground that it was irrelevant and, if relevant, far outweighed by the danger of unfair prejudice.

SDCL 19–12–3 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Consumption of alcoholic beverages by Mrs. Higbee may be relevant to the issue of whether she was contributorily negligent. The probative value of the admission of the blood test result, however, was substantially outweighed because the admission unfairly prejudiced the plaintiff, confused the issues, and misled the jury. SDCL 32–23–1 deals with people who drive or are in actual physical control of a vehicle, not with pedestrians. Because admission of the blood test result tended to put Mrs. Higbee on the same level with the intoxicated operators of vehicles who violate SDCL 32–23–1, the test results should not have been admitted into evidence. See *Bertness v. Hanson,* 292 N.W.2d 316 (S.D.1980).

■ Appellant also objected to the Court giving Instruction Number twenty-seven which dealt with the duties of a pedestrian.[1] A Yankton city ordinance provided:

1. Instruction No. 27 reads: The jury is instructed that statutes or ordinances giving pedestrians the right of way at intersections create a preferential, but not an absolute right in their favor, and they still owe a duty to exercise ordinary care for their own safety. Before attempting to cross a street that is being used for traffic of motor vehicles, it is the pedestrian's duty to make reasonable observations to learn the traffic conditions confronting him or her; to look to that vicinity from which, were a vehicle approaching, it would immediately endanger his or her passage; and to try to make a sensible decision whether it is reasonably safe to attempt the crossing. What observations he or she should make, and what he or she should do for their own safety, while crossing the street, are matters which the law does not attempt to regulate in detail and for all occasions, except in this respect: It does place upon the pedestrian the continuing duty to exercise ordinary care to avoid an accident. In deter-

mining whether or not Plaintiff was guilty of contributory negligence, you should consider, as may appear from the evidence, the character of the intersection, the weather conditions, whether the place of crossing was light or dark, the traffic upon the street, and whether or not such traffic could, with reasonable diligence, have been observed by the Plaintiff; whether or not she looked before or while she was in the street crossing; her manner of crossing the street, and every other fact and circumstance which tends to show that she did or did not use care commensurate with the dangers to be reasonably apprehended, and did or did not use that degree of care which a reasonably careful and prudent person would have used in the same or similar situation. The jury is further instructed that a person lawfully and carefully using a street crossing has the right to assume that all other persons using the street will also use ordinary care and caution. This rule al-

The operator of any vehicle shall yield the right-of-way to a pedestrian crossing a highway within any marked crosswalk or within any unmarked crosswalk at the end of a block[.] City of Yankton, S.D., Ordinance # 14–131.

SDCL 32–27–1 provides:

The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block[.]

The aforementioned ordinance and statute give pedestrians a preferential right-of-way but this is not an absolute right-of-way and they still owe a duty to exercise ordinary care for their own safety. However, Instruction Number twenty-seven as given is unfairly slanted in favor of appellee. On retrial, Instruction Number twenty-seven should be refined accordingly.

By virtue of the ruling of this Court, it becomes unnecessary to address the other issues raised by appellant herein. The judgment is reversed and the case is remanded back to the trial court for a new trial on all the issues.

FOSHEIM, C.J., and DUNN, J., concur.

WOLLMAN and HENDERSON, JJ., concur specially in part, and dissent in part.

MARTIN, Circuit Judge, for MORGAN, J., disqualified.

WOLLMAN, Justice (concurring specially in part; dissenting in part).

I agree that the judgment should be reversed and that the case should be remanded to the circuit court for new trial. Only the questions of Mrs. Higbee's possible contributory negligence and the amount of damages, if any, that she is entitled to should be submitted to the jury, however, for I would hold that defendant was negligent as a matter of law for failing to yield the right-of-way to Mrs. Higbee. The pictures of the accident scene, taken one year to the day after the accident and under similar conditions, graphically demonstrate that defendant should have seen Mrs. Higbee in the intersection at a time when defendant's vehicle would have been far enough from the intersection to permit defendant to yield the right-of-way to Mrs. Higbee.

I agree with Justice Henderson that evidence of a pedestrian's blood-alcohol content should be admissible in a case of this nature. I disagree with the majority opinion's holding that the admission of the results of the blood-alcohol test in the instant case unfairly prejudiced plaintiff, confused the issues, and misled the jury. As I read the trial court's instructions, I see no reference whatsoever to SDCL 32–23–1. Rather, the trial court merely instructed the jury that the fact of consumption of alcoholic beverage did not constitute negligence by itself but was merely a circumstance which might be considered in determining whether a person has exercised ordinary care. So stated, I find the instruction to be unexceptionable.

Also, I disagree with the majority opinion's characterization of Instruction No. 27

---

lows pedestrians to assume that motor vehicle drivers will obey and abide by the traffic laws and regulations. If you find from the preponderance of the evidence that Plaintiff failed to make such use of her senses of sight and hearing and to take such steps for her safety to avoid the accident, as an ordinarily careful and prudent person would take under the same or similar circumstances, and that such failure contributed to cause the injury and damages complained of, then the Plaintiff cannot recover, unless her negligence was slight in compari-son to that of the Defendant, as defined in these instructions. On the other hand, if you find, from the preponderance of the evidence, that Plaintiff exercised such ordinary care as a prudent person would under the same or similar circumstances, then Plaintiff would not be contributorily negligent, and, if you further find that the negligence of the Defendant was the proximate cause of the accident and subsequent injury, then you must return a verdict for Plaintiff in accordance with the damage instruction herein set out.

as being unfairly slanted in favor of appellee. Granted, the instruction is longer and more detailed than most, but we are not vouchsafed even a hint regarding its deficiencies or inaccuracies. Indeed, the trial court may well be forgiven for characterizing as Delphian the direction that on retrial the instruction should be refined. Although I am in general agreement with the views set forth by the Supreme Court of California in *LaManna v. Stewart*, 13 Cal.3d 413, 118 Cal.Rptr. 761, 530 P.2d 1073 (1975), cited in Justice Henderson's separate opinion, I see nothing in that case that conflicts with the principles of law set forth in Instruction No. 27. Indeed, in the *Stewart* case, the uncontroverted evidence showed that the pedestrian had maintained a lookout for oncoming traffic once she entered the crosswalk, while in the instant case the uncontroverted testimony is that Mrs. Higbee looked straight ahead once she left the curb. This evidence, coupled with the evidence of Mrs. Higbee's blood-alcohol level and the testimony of a nearby resident that traffic on the street in question was extremely heavy immediately prior to the accident, supported the giving of the challenged instruction in the form in which it was presented to the jury.

HENDERSON, Justice (concurring specially in part; dissenting in part).

I would permit the introduction of blood alcohol tests on pedestrians involved in accidents providing that it is first established that there is evidence of contributory negligence on the part of the pedestrian. In this case, I have carefully reviewed the record and I simply cannot see any contributory negligence on the part of Mrs. Higbee. The accident happened *in the crosswalk* when Mrs. Higbee was at least halfway through it. An independent eyewitness testified that appellee's car was traveling 35–40 m.p.h. in a 30 m.p.h. speed zone. Appellee's headlights were on and the street lights were on. There was no excuse whatsoever for not seeing the pedestrian until five feet before impact. Mrs. Higbee had the right-of-way and appellee failed to yield. It was not a preferential right-of-way. It was, under these facts, a right-of-way belonging to her.* Instruction 27 did not just slant the law—it contravened Yankton's ordinance and our State statute. And it negated the pedestrian's right-of-way. For an opinion on rights and duties of pedestrians under a California statute similar to ours supporting my viewpoint, *see LaManna v. Stewart*, 13 Cal.3d 413, 118 Cal.Rptr. 761, 530 P.2d 1073 (1975). *See also, Simet v. Sage*, 208 Neb. 13, 301 N.W.2d 600 (1981).

A distinction must be made between pedestrians crossing in designated crosswalks and pedestrians who are jaywalking. Assuming arguendo, that if an intoxicated person bolts out in front of a car from a curb in a noncrosswalk and is struck, that is negligence. And surely, it should be of probative value as to whether the alcohol content in the pedestrian's blood is sufficient to establish relevant evidence of intoxication. Blood tests are not unique in law or in science to singularly prove a crime, i.e., driving while intoxicated. A variety of facts can be established by blood tests. I would not, carte blanche, outlaw the admissibility of blood tests on pedestrians in pedestrian-motor vehicular accidents.

In this particular case, I would reverse with instructions to the trial court to enter a judgment for appellant on liability and remand for proof on damages. The liability of appellee has been established. An entire new trial on liability would be costly, time consuming, and fruitless under the state of this record.

---

* And, in South Dakota, where shall we place our values? On inanimate objects or human beings? The Yankton ordinance and the State statute say nothing about a *preferential* right- of-way. If a citizen is walking in a crosswalk, it behooves the automobile driver to look out, beware, drive carefully, and yield the right-of- way.