AMERICAN STATE BANK, Trust Department, Special Administrator of the Estate of Ann Higbee, Plaintiff and Appellee,

v.

Lynette A. LIST–MAYER, Defendant and Appellant.

No. 14285.

Supreme Court of South Dakota.

Argued Feb. 14, 1984.

Decided May 29, 1984.

Steven M. Johnson of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellee.

James E. Doyle of Doyle, Bierle, Porter & Kennedy, Yankton, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a final judgment in a personal injury action in which plaintiff, the special administrator of the estate of Ann Higbee, deceased,* received a jury verdict of $17,500, and an award from the trial court of $9,385 for prejudgment interest. We affirm the judgment as modified to eliminate the award for prejudgment interest.

The first trial of the action commenced in November of 1980, and the jury returned a verdict for defendant. We reversed and remanded for a new trial. *See American State Bank v. Mayer*, 326 N.W.2d 110 (S.D.

---

* Decedent died in April of 1981. She had suffered a heart attack in November of 1980. No direct relationship was shown between the heart attack and the accident in issue.

1982). The second trial, from which this appeal stems, was held in May of 1983.

Mrs. Higbee, who was 78 at the time, was struck by defendant's automobile at approximately 8:00 p.m. in Yankton on September 29, 1979. As she was stepping off the curb into an unmarked cross-walk, she looked to her left and right. As she proceeded through the cross-walk, she walked normally but did not look either direction.

Although the visibility and road conditions were good on the night of the accident, defendant did not see Mrs. Higbee soon enough to avoid hitting her. Defendant testified that upon seeing Mrs. Higbee she slammed on the brakes but did not sound her horn. The investigating officer observed that the front of the car was three-quarters of the way through the cross-walk and found Mrs. Higbee lying two or three feet ahead of the vehicle. Although a witness testified that he had heard the brakes squeal prior to the collision, the investigating officer found no skid marks at the scene of the accident. Mrs. Higbee suffered substantial injuries as a result of the accident.

A blood alcohol content test was administered to Mrs. Higbee at the request of the police department. At the first trial, defendant offered expert testimony indicating that at the time of the accident Mrs. Higbee's blood alcohol content was .125. We held that the test results should not have been admitted because they unfairly prejudiced the plaintiff, confused the issues, and misled the jury by putting Mrs. Higbee on the same level as intoxicated drivers who violate SDCL 32–23–1. *See American State Bank v. Mayer*, 326 N.W.2d at 111.

On remand, the trial court issued a pretrial order that no testimony be permitted concerning the blood alcohol content results of the test or the fact that such a test was administered. Testimony was received, however, concerning Mrs. Higbee's drinking problem and that alcohol was smelled on her breath after the accident. The jury was instructed that the fact that a person had consumed some alcoholic beverage is a circumstance which may be considered in determining whether the person had exercised ordinary care.

Defendant contends that the trial court erred in denying the following offer of proof:

We would at this time, Your Honor, propose to stipulate or agree with counsel that the blood alcohol was withdrawn from Ann Higbee at 11:15 and given to a lab technician. And that a lab technician, if called, would testify that that blood alcohol level taken and examined by the laboratory technician would show a blood alcohol level of .08 percent. Further, that again, the blood alcohol was drawn at 11:15. We would then propose and offer to call Dr. Michael McVay, who is the son of C.B. McVay, and a member of the Yankton Medical Clinic of Yankton, South Dakota, and a board certified internal medicine doctor, and that he would testify that assuming, and the accident took place, at 8:15 on September 29th, 1979, and the blood alcohol was withdrawn at 11:15 that same evening, that he would testify that alcohol dissipates at .015 percent per hour. And that in this case there would be a three hour difference between the time of the accident and the time of withdrawal of the blood. He would further testify that under normal circumstances the dissipation would be .045 percent; and that he would further testify he would add this to the existing blood alcohol to calculate what it would have been at 8:15 P.M. on September 29th, 1979. And that he would further testify according to his calculation the blood alcohol would then be .125 percent. He would further testify that assuming the weight of Ann Higbee to be 165 pounds, from that he could calculate how many drinks necessary for a person of her weight to have a blood alcohol of .125 percent. Which would in his opinion be the equivalent of five bottles of beer or six bar drinks, each bar drink containing one ounce of 86 proof alcohol.

Dr. McVay, we offer to show, would further testify that with a blood alcohol of .125 percent, it would indicate an indi-

vidual would have difficulty making quick decisions and judgments, difficulty—the person would have a difficult time in handling stress situations, decision making. . . .

■ We conclude that under the "law of the case" doctrine, the trial court did not err in denying the offer of proof. This doctrine is predicated on the policy that once an issue is litigated and decided it should remain settled throughout the litigation. *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976). For future cases, however, we wish to stress that our holding on the first appeal was based on the comparison that was likely made between Mrs. Higbee and one prosecuted for driving while intoxicated. The testimony in the first trial regarding blood alcohol content was given by a chemist from the state chemical laboratories, who testified regarding his connection with drug and alcohol violations and referred to determinations reported by the National Safety Council. Testimony regarding blood alcohol content, when not made so as to compare a defendant in a civil case with a defendant in a D.W.I. case, should be admissible as relevant to the issue of contributory negligence. To reject competent evidence regarding the effect of certain blood alcohol content levels upon a person's coordination, reaction time, ability to make accurate judgments and decisions, and related physical and cognitive abilities would be to engage in a form of judicial know-nothingism. That such evidence might make it more difficult for a plaintiff to counter an allegation of contributory negligence is no valid reason to exclude it. Our opinion on this point in the first appeal in this case should therefore be considered as being strictly limited to the situation presented therein, i.e., a strong association between the blood alcohol content of the injured person and the ramifications of our driving while intoxicated laws and the statutory presumptions flowing from certain blood alcohol content levels. Where competent evidence of intoxication and the effects thereof is offered in a manner unrelated to our driving while intoxicated and statutory presumption

laws, it should be received, just as other recognized scientific evidence is received.

Had our opinion in the first case been more precisely written on this issue, the trial court would have been justified in admitting the proffered testimony, assuming, of course, that the foundational bases for the testimony were otherwise satisfactorily established. Given the overly broad language in our opinion in the first appeal, however, the trial court cannot be faulted for following the mandate of our holding therein.

■ Defendant next contends that the trial court erred in not directing a verdict in her favor for the reason that Mrs. Higbee's contributory negligence was more than slight as a matter of law. Defendant contends that the trial court's post-trial memorandum opinion supports this claim:

In this case the Plaintiff was awarded a judgment of $17,500.00. The actual or special medical costs exceeded that by several thousand dollars. The jury obviously reduced the amount of specials to the amount rendered by its verdict by the application of the comparative negligence instruction.

Defendant argues that in the light of Mrs. Higbee's undisputed injuries and the amount of the medical bills, the amount of the verdict reflects such a reduction for Mrs. Higbee's contributory negligence as to render manifest the fact that as a matter of law her negligence was more than slight in comparison to defendant's. We do not agree.

SDCL 20–9–2 provides:

In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

The term " 'slight negligence' is now a relative and variable term which defies precise definition and prohibits an arbitrary mathematical ratio." *Crabb v. Wade*, 84 S.D. 93, 98, 167 N.W.2d 546, 549 (1969). The record does not disclose that any interrogatories were sent to and returned by the jury indicating the amount, if any, by which the award was reduced for contributory negligence (we do not suggest that interrogatories should have been submitted to the jury). We will not speculate on whether the award reflects a finding of more than slight contributory negligence or involves a determination regarding the reasonableness of the bills. In short, defendant has not demonstrated as a matter of law that she was entitled to a directed verdict on the issue of Mrs. Higbee's contributory negligence.

■ Defendant contends that the trial court erred in awarding prejudgment interest. The trial court based its action on SDCL 21–1–11, which provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

We conclude that this statute is not applicable in the instant case. Plaintiff's complaint prayed for general damages in the amount of $50,000, for hospital, doctor, and medical expenses in excess of $22,000, for future doctor, hospital, and medical expenses in the amount of $10,000, and for nursing home care in the amount of $77,502.70.

Damages are certain or capable of being made certain "if there exists established or reasonably ascertainable market prices or values of the subject matter by reference to which the amount due may be determined by computation." *Beka v. Lithium Corp.*, 77 S.D. 370, 375, 92 N.W.2d 156, 159 (1958). *See also Dougherty v. Beckman*, 347 N.W.2d 587 (S.D.1984); *Northwestern Engineering v. Thunderbolt Enterprises*, 301 N.W.2d 421 (S.D.1981).

Putting aside for another day the question whether medical bills incurred as a result of a defendant's negligent conduct can ever be considered as certain or capable of being made certain, we simply cannot determine what portion of the general verdict rendered for plaintiff represented an award for medical bills and what portion, if any, represented an award for pain and suffering and the other elements of plaintiff's claim for personal injuries, which clearly are not within the purview of the damages contemplated by SDCL 21–1–11. *See Mrowka v. Crouse Cartage, Co.*, 296 N.W.2d 782 (Iowa 1980); *Abel v. Dodge*, 261 Iowa 1, 152 N.W.2d 823 (1967).

SDCL 21–1–13 provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." This statute is inapplicable because the jury, not the trial court, was the trier of fact. *Cf. Shaffer v. Honeywell, supra.*

The judgment is modified to eliminate the award for prejudgment interest. As so modified, the judgment is affirmed.

FOSHEIM, C.J. and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Having pioneered some theory in this action, see *American State Bank, Trust Dep't v. Mayer*, 326 N.W.2d 110, 113 (S.D. 1982) (Henderson, J., concurring specially in part, dissenting in part), which appears to be bearing some fruit, nonetheless, I must write specially to preserve the integrity of my thought.

Notice in my first writing that "I would permit the introduction of blood alcohol tests on pedestrians involved in accidents *providing that it is first established that there is evidence of contributory negligence on the part of the pedestrian.*" *Id.*

at 113 (emphasis supplied). Were it not so, a clever defense lawyer would parade before the jury that the pedestrian had excessively imbibed of the spirits or at least had partaken of some alcohol, and thus, create a prejudice against the pedestrian. Unless there is threshold proof of negligence on the part of the pedestrian, a blood test should be inadmissible lest the trial turn into a "walking while intoxicated" struggle. My point is that the walker (pedestrian) could be negligence-free, and if such be the case, the fact that his or her blood alcohol test revealed some percentage of alcohol should not go before the jury to preclude the innocent pedestrian from recovering a fair verdict for injuries sustained. Said test would not, as mentioned, tend to prove or disprove the issue of liability in the case.