727 P.2d 1142

John STATTNER and Thelma Stattner, husband and wife, Plaintiffs-Appellants,

v.

CITY OF CALDWELL, a municipal corporation of the County of Canyon, State of Idaho, Defendant-Respondent.

No. 16077.

Supreme Court of Idaho.

Aug. 15, 1986.

Rehearing Denied Nov. 14, 1986.

Randolph Farber, and Frank Kibler, Nampa, for plaintiffs-appellants.

Thomas P. Baskin III of Imhoff & Lynch, Boise, for defendant-respondent.

BAKES, Justice.

The Stattners filed a wrongful death action against the City of Caldwell alleging that, due to the city's failure to adequately warn of a road hazard, their son, Dusty Stattner, died in a single car accident. Pursuant to I.A.R. 12,[1] this Court granted permission for the Stattners to appeal the district court's denial of their motion *in limine*. The motion *in limine* sought suppression of evidence pertaining to the results of a blood alcohol test which was conducted on the deceased by the county coroner. We agree with the district court and find that the motion *in limine* was properly denied.

Shortly after midnight on March 19, 1982, Dusty Stattner left the Corral Bar in Caldwell, where he had been socializing with members of his rugby team. After leaving the Corral Bar, he drove his 1974 Ford Mustang in an easterly direction down Main Street. The paved section of Main Street ends at the intersection of Main and 12th. East of this intersection, Main Street becomes a graveled road and proceeds a short distance further east before coming to an end at the brink of the Indian Creek Canal. Although small bushes border the top of the embankment, at the time of the accident Main Street dead-ended at the canal, and no railings, barriers or dead end signs marked the end of the road.

Later that morning, Stattner's vehicle was found upside down in the Indian Creek Canal. Investigation showed that the Mustang entered Indian Creek approximately 260 feet from the intersection of 12th and Main and that the vehicle left 49 feet of skid marks before striking two small trees at the edge of the embankment. The investigation also indicated that the vehicle had traveled approximately 29 feet in the air out from the edge of the embankment.

The body was subsequently transported to the Caldwell Memorial Hospital where an autopsy was performed at the direction of the county coroner. Blood samples taken from the body were delivered by the coroner to the Mercy Medical Center in Nampa for blood alcohol content testing. The tests indicated a blood alcohol concentration of .16%.

Ultimately, the decedent's parents filed suit against the City of Caldwell, alleging that their son's death was caused by the carelessness of the City of Caldwell. Specifically, the suit alleged that the city failed to adequately warn persons using the roadway of the dangers and to provide barricades at the end of Main Street.

Once the results of the blood alcohol test became known, the Stattners filed a motion *in limine* to have the results of the test suppressed. After extensive briefing of the issue from both parties, and oral argument, the district court denied the motion *in limine*.

Pursuant to I.A.R. 12, this Court granted permission for the Stattners to appeal the district court's denial of their motion *in limine* to this Court. The sole issue raised in this appeal is whether the results of the blood alcohol test conducted at the coroner's request must remain completely confidential and are thus inadmissible as evidence of decedent's intoxication at the time of the accident. Resolution of this issue requires us to examine several statutory sections.

I.C. § 19–4301(a) requires that a coroner investigate a death whenever the coroner is informed that a person has died "[a]s a result of violence whether apparently homicidal, suicidal, or accidental." Here, the facts of this case indicate that a coroner's investigation was necessary. Further, under I.C. § 19–4301(c), a coroner

---

1. I.A.R. 12(a) states, in pertinent part:
 "Permission may be granted by the Supreme Court to appeal from an interlocutory order or decree of a district court in a civil or criminal action, or from an interlocutory order of an administrative agency, which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation...."

must conduct a coroner's inquest if he has reasonable grounds to believe that the death occurred under any of the circumstances stated in I.C. § 19–4301(a). Pursuant to I.C. § 19–4303, at the coroner's inquest, the coroner must summon and examine as witnesses every person having knowledge of the facts. Here, the witnesses called to testify would include the physician who conducted the autopsy[2] and the lab technicians who performed the blood alcohol tests. The testimony of these witnesses must be reduced to writing and filed with the clerk of the district court. I.C. § 19–4306. Thus, the results of the coroner's inquest, a public hearing, become a matter of public record. Moreover, the coroner's records of the investigation are open to public inspection. See I.C. § 59–1009. Because the coroner's inquest, a public meeting, as well as the results and records of the investigation, are a matter of public record, we find no merit in appellants' suggestion that the results of the blood alcohol test, which will necessarily be a part of the coroner's report as well as a significant issue at the inquest, must remain completely confidential and are thus inadmissible at trial.

Appellants' argument that I.C. § 49–1016[3] precludes admission of the blood alcohol test results ordered by the coroner is unpersuasive. I.C. § 49–1016 requires that blood samples from accident victims be delivered to the director of the Department of Health & Welfare or his designee, in order that the department run tests on these samples. I.C. § 49–1016 then provides that the information obtained from tests run on the blood samples sent to the Department of Health & Welfare for testing may only be used by the department for statistical purposes. The statute does not address the issue of what use may be made of the results of other blood sample tests ordered by a coroner who is acting in the course of his statutory duties as a coroner as set forth in I.C. § 19–4301 et seq.

Nor are we convinced that I.C. § 39–270(a)[4] prevents disclosure of the results of the tests. I.C. § 39–270 only limits disclosure of information compiled by the State of Idaho statistics unit and held in custody by the state registrar. Here, the information which appellants seek to sup-

2. The autopsy was performed pursuant to I.C. § 19–4301B, which reads:

"**19–4301B. Performance of autopsies.**—The coroner may, in the performance of his duties under this chapter, summon a person authorized to practice medicine and surgery in the state of Idaho to inspect the body and give a professional opinion as to the cause of death. The coroner or the prosecuting attorney may order an autopsy performed if it is deemed necessary accurately and scientifically to determine the cause of death. When an autopsy has been performed, pursuant to an order of a coroner or a prosecuting attorney, no cause of action shall lie against any person, firm or corporation for participating in or requesting such autopsy."

3. "**49–1016. Testing blood of persons killed in accidents.**—The director of the department of health and welfare, jointly with the various county coroners, shall provide a system and procedure whereby all morticians in the state of Idaho shall obtain blood samples from all pedestrians and motor vehicle operators who have died as a result of and contemporaneously with an accident involving a motor vehicle.

"All investigating police officers shall report such fatalities to the county coroner or follow the procedure established by the joint action of the board and the various coroners.

"The blood sample, with such information as may be required, will be delivered to the director of the department of health and welfare or his designee. Upon receipt of such sample the director will cause such tests as may be required to determine the amount of alcohol, narcotics and dangerous drugs contained in such sample.

"The results of such tests shall be used exclusively for statistical purposes and the sample shall never be identified with the name of the deceased. Any person releasing or making public such information other than as herein prescribed, shall be guilty of a misdemeanor."

4. "**39–270. Disclosure of information.**—(a) Certificates and records in the custody of the state registrar shall be open to inspection subject to the provisions of this chapter and the regulations of the board, the provisions of section 9–302, Idaho Code, to the contrary notwithstanding; and it shall be unlawful for any state or local official or employee under this chapter to disclose any data contained in the records, except as authorized by this chapter and the regulations of the board."

press was in the custody of the county coroner, the physician performing the autopsy, and the lab technicians who performed the blood alcohol content tests. It is public information in the hands of those individuals. Thus, the district court correctly concluded that I.C. §§ 49–1016 and 39–270(a) were inapplicable to such evidence.

Accordingly, the district court's denial of appellants' motion *in limine* is upheld. Costs to respondent.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring in the result.

I am uncomfortable with the majority's cursory treatment of I.C. § 49–1016. On its face, that statute would appear to prohibit the use as evidence of blood samples taken from those killed in car accidents:

> The results of such tests shall be used exclusively for statistical purposes and the sample shall never be identified with the name of the deceased. Any person releasing or making public such information other than as herein prescribed, shall be guilty of a misdemeanor.

The majority reasons that I.C. § 49–1016 "does not address the issues of what use may be made of the results of *other* blood sample tests ordered by a coroner who is acting in the course of his [or her] statutory duties as a coroner as set forth in I.C. §§ 19–4301 *et seq.*" (Emphasis added.) A strong argument can be made that I.C. § 49–1016 specifically governs in all circumstances a coroner's taking of blood samples from those killed in traffic accidents. The statute clearly includes "the various county coroners" within its dictates. Further, the policy of the statute to preserve anonymity seemingly would be thwarted if a coroner simply could draw several samples, one of which is tested in confidence and one of which is not. In short, I.C. § 49–1016 is ambiguous *at best* concerning the practice condoned by the majority. The majority finds this possible ambiguity determinative and gives the stat-

ute the narrowest possible reading. I acceed to their judgment with reluctance.

BISTLINE, Justice, dissenting on denial of petition for rehearing.

The majority opinion authored by Justice Bakes makes one statement which does not withstand a second and closer scrutiny. Unless there is something in the statutory law which escapes me, Justice Bakes has simply *assumed* that any and all coroner's inquests require that a sampling of the deceased's blood be taken, and "will necessarily be a part of the coroner's report as well as a significant issue at the inquest." To the contrary, it takes little effort to suggest that in many, if not most, instances there will not be a sampling and testing of blood.

In a clear case of arrogant disregard of legislative intent, this Court has destroyed a laudable purpose served by § 49–1016— the confidentiality provisions. The Stattners have not urged that we simply change our opinion and rule in their favor. All that is urged upon us is that we grant a rehearing and consider legislative purpose, the contention being made that we have not done so. The proposition has been properly and fairly presented to us:

> Legislative purpose calls for a consideration of legislative intent, therefore we ask the question as follows: What was the intention of the legislature in the adoption of Section 49–1016 I.C.? Can we reasonably infer that it was the intention of the legislature in any sort of an accident case, whether criminal means were involved or not, that the County Coroner could take his own blood test, and the Mortician handling the remains of a decedent would also take a blood test, and forward the sample to the laboratory of the State Department of Health and Welfare, where the results would remain confidential?

We do call attention to the fact that the subject of legislative intent has been construed and discussed many times, commencing with the formulation by

Lord Coke back in 1584, with reference to acts passed by English Parliament. In part Lord Coke said this:

And then the office of all the judges is always to make such construction as shall suppress the mischief, advance the remedy, and to suppress subtle invention and evasions for continuance of the mischief, and *pro privato commodo,* and to add force and life to the cure and remedy, according to the true intent of the makers of the act *pro bono publico.*

*Heydon's Case,* 3 Co.Rep. 72, 76 Eng. Repr. 637 (1584). Counsel have, in our private library, the three volume work of *Sutherland Statutory Construction,* Third Edition, Horack. While the Third Edition to the work was published in 1943, a lot of the text material seems to be fundamental Hornbook Law.

In Volume Two of *Sutherland, supra,* this pertinent observation is made at Page 316:

... No single canon of interpretation can purport to give a certain and unerring answer to the question. The question of meaning lies deeper than the law. It involves questions of judgment too subtle for articulation and issues of the transference of knowledge as yet unprobed by lawyers, scientists or psychologists.

Further on Page 327 of the same work this very pertinent observation is made in § 4510 of Volume Two:

A statute is a solemn enactment of the state acting through its legislature and it must be assumed that this process achieves an effective and operative result. It cannot be presumed that the legislature would do a futile thing. Thus, legislative language will be interrupted on the assumption that the legislature was aware of existing statutes, the rules of statutory construction, and the judicial decisions and that if a change occurs in legislative language a change was intended in legislative result.

These assumptions are sound....

In the opinion of the Court, the learned Justice writing the Opinion, pointed out some of the purported facts as to the traveling of the vehicle, and some of the distances. It seems apparent to us that these distances clearly indicate tha the deceased young man was aware of danger, but had no warning thereof.

Section 49-1016 I.C., relates to motor vehicle operators and pedestrians who have died as a result of and contemporaneously with an accident involving a motor vehicle. At the end of the statute, there even appears to be a criminal misdemeanor penalty for disclosure of the information, thus, it would appear that we have one test of the Coroner, if he is allowed to take such tests where no criminal act is involved, and another test which is confidential and carries a misdemeanor penalty. It seems to us that all of this is highly inconsistent and we do not have a clear and concise unambiguous clarification of the problems.

IN CONCLUSION, we respectfully urge that a rehearing be granted so that the matter can be more adequately approached with the subject of legislative intent being given a careful and considerate scrutiny. We are confident that this might and could result in the upholding of the Motion in Limine filed in the trial Court.

Appellants' Petition for Rehearing, pp. 4-7.

The Court is not all that busy that we could not easily allow an hour of our time to hear reargument on an issue which, though for all I know may have been considered, has not been discussed in the opinion of the Court. My vote is to grant.