1999 SD 103

**Sylvia Joann WANGSNESS as Special Administratrix of the Estate of DeWayne E. Wangsness, Deceased, Plaintiff and Appellant,**

v.

**Bobby Alan ALDINGER Defendant, and Allstate Insurance Company, Defendant and Appellee.**

**No. 20679.**

Supreme Court of South Dakota.

Argued Feb. 24, 1999.

Decided July 28, 1999.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, South Dakota, attorneys for plaintiff and appellant.

Paul S. Swedlund, J. Crisman Palmer of Gunderson, Palmer, Goodsell & Nelson, LLP, Rapid City, South Dakota, attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we must decide if, absent testimony from the person who performed the analysis, a coroner's record of a blood alcohol test result was admissible against the decedent's estate in a wrongful death action. We conclude that under both the public and business records exceptions to the hearsay rule, the test result was properly admitted. We also affirm the trial court's jury instruction on the blood alcohol presumption as applied to the defendant driver.

### Facts

[¶ 2.] On November 28, 1994, DeWayne Wangsness, was working at his bar in Glenham, South Dakota. At 11:30 p.m. he telephoned his wife, Sylvia, at their home in Java, to tell her that he would be staying the night in Glenham because his truck was not running. He phoned her again after midnight, to say he was coming home, as he and a friend had gotten the truck started. It was a cold and snowy night. He told her he would leave once his truck's engine warmed up.

[¶ 3.] Wangsness left Glenham headed east on Highway 12. It was icy with light snow in places. As it approaches Selby, the road bends southward. Two miles north of Selby, his truck went into the west side ditch. As evidenced by the prints from his cowboy boots, he left his vehicle possibly walking toward a farmhouse about 400 yards to the east. His tracks ended at the middle of the road.

[¶ 4.] Bobby Aldinger left work around six that evening. He had three or four beers with a friend, Aldeen Sandmeier, in Bowdle. At 7:30 p.m. Aldinger, Sandmeier and another friend, Travis Peterson, left for Mobridge, forty-five miles away. What happened after they arrived there is disputed, but all agree Sandmeier continued

to drink—Aldinger did not. The group left Mobridge sometime after midnight to return to Bowdle. Sandmeier slept in the backseat.

[¶ 5.] Travelling east on Highway 12, Aldinger recalled his speed at forty to forty-five miles per hour. He testified that because his car "was very light," and handled poorly on ice, he drove slowly. With blowing snow, visibility was limited at times. They saw cars in the ditch along the way. After they passed the junction at Highway 83 and after the road curved south toward Selby, Aldinger saw something and it was "just about upon him." Then he realized it was "somebody kneeling" in the road. Peterson, too, saw "a large man or animal with his back to the car on his knees." Aldinger applied his brakes just as the car struck. He later said that when he hit the brakes, the front end of his car "veered to the left." After impact, the body "rolled off" the hood on the driver's side, and eventually came to rest some 220 feet from where the footprints ended. Aldinger never stopped. Thinking it best to get help immediately, he drove on to Selby to contact authorities.

[¶ 6.] When they reached Shorty's Truck Stop, Aldinger asked someone to call 911. A Selby police officer arrived and Peterson went back with the officer to the scene. Aldinger remained at Shorty's. After investigating at the accident site, a highway patrol officer administered a preliminary breath test (PBT) to Aldinger, which indicated his blood alcohol content (BAC) was in a range from .001 to .049 percent by weight, well under the statutory DUI presumption. The county coroner removed the decedent and, as required by law, took a blood sample and mailed it to the South Dakota State Health Laboratory. The test result sent back to the coroner showed a BAC of .256 percent. In the coroner's opinion, based on the body's injury pattern, Wangsness was probably getting up after slipping on the ice when Aldinger's car struck him in the lower back while he was facing the opposite direction. Wangs-ness was six feet, four inches tall and weighed between 290 and 300 pounds.

[¶ 7.] The Wangsness estate brought a wrongful death action against Aldinger. Aldinger's insurance had lapsed; therefore, the carrier for Wangsness, Allstate, was made a party defendant under its uninsured motorist coverage provision. Allstate asserted that Wangsness had been contributorily negligent and assumed the risk by walking in the middle of an icy road late at night when blowing snow had reduced visibility. A jury found for Aldinger and Allstate. Judgment was entered accordingly. The estate appeals, contending that the trial court erred in (1) allowing admission of the blood alcohol test result without proper foundation, and (2) instructing the jury on the presumptions under the DUI laws in relation to Wangsness, a pedestrian.

## Standard of Review

[¶ 8.] A trial court's evidentiary rulings are presumed correct; thus, we examine them under the abuse of discretion standard. *Schmidt v. Royer*, 1998 SD 5, ¶ 9, 574 N.W.2d 618, 621 (citations omitted). Moreover, even if error is established, it must be shown to be prejudicial. *State ex rel. Dep't of Transp. v. Spiry*, 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (citation omitted). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citing *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986)). Questions of law are reviewed de novo. *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771 (citation omitted). " 'Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury.' " *Kuper v. Lincoln–Union Elec. Co.*, 1996 SD 145, ¶ 32, 557 N.W.2d 748, 758 (quoting *Bauman v. Auch*, 539 N.W.2d 320, 323 (S.D.1995)).

## Analysis and Decision

### 1. Coroner's Blood Alcohol Report

[¶ 9.] The estate contends the blood alcohol test result from the decedent should not have been admitted at trial: the toxicologist who analyzed it did not testify and the blood was drawn in violation of SDCL 32–23–14. Nonetheless, the trial court overruled objections based on both hearsay and lack of proper foundation and admitted the test result. SDCL 19–16–12 (Rule 803(8)) provides an exception to the hearsay rule for public records and reports:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth

. . . .

(2) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... are not excluded by § 19–16–4 [Rule 802], even though the declarant is available as a witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

Business records are also excepted pursuant to SDCL 19–16–10 (Rule 803(6)). Under the abuse of discretion standard, trial courts carry broad discretion in deciding the admissibility of records. *State v. Brown*, 480 N.W.2d 761, 763 (S.D.1992) (citations omitted).

[¶ 10.] As for the estate's first argument, that the report was inadmissible hearsay, we think it was within the court's discretion to admit the evidence as either a public or a business record. Several jurisdictions have held routine laboratory reports to be public records. *See generally* 2 McCormick on Evidence § 296, at 293 n 29 (John W. Strong et al. eds., 4th ed. 1992). South Dakota law mandates blood draws from persons who die "from apparent violence, fire, suicide or motor vehicle, agricultural, or industrial accident." SDCL 34–25–22.1. After analysis of the blood, the coroner kept the test result "in the course of a regularly conducted business activity" and "pursuant to duty imposed by law as to which matters there was a duty to report." SDCL 19–16–10, – 12.

[¶ 11.] Appropriately, the foundation offered at trial established that the blood sample was properly taken by the coroner, a public official; the blood draw and transmittal to the health lab were required as part of the coroner's statutory duties; the resulting lab report was kept on record in the coroner's office as a public record; and, although the coroner did not have personal knowledge of the testing itself, the lab report was a factual finding, bearing the decedent's name and the coroner authenticated it. *See* SDCL 19–16–12(3); John W. Larson, South Dakota Evidence § 803.8(2) (1991). Other courts have similarly upheld admission of such records. *See, e.g., United States v. Farmer*, 820 F.Supp. 259 (W.D.Va.1993) (Certificate of Analysis completed by the Virginia Division of Forensic Science regarding defendant's BAC admissible under Federal Rules of Evidence business records exception to hearsay rule); *see also Nichols v. McCoy*, 38 Cal.2d 447, 240 P.2d 569, 569–70 (Cal.1952) (en banc) (blood report admissible under Uniform Business Records as Evidence Act).

[¶ 12.] Absent some showing to the contrary, § 19–16–12 (Rule 803(8)) assumes the reliability of public records. *See generally Staples for Staples v. Glienke*, 142 Wis.2d 19, 416 N.W.2d 920, 925 (Wis.Ct.App.1987) (citation omitted); *see also Wooldridge v. Woolett*, 28 Wash. App. 869, 626 P.2d 1007, 1010 (Wash.Ct. App.1981) (blood test results presumed accurate). Other than merely asserting potential lack of untrustworthiness, the estate makes no showing that the test was inaccurate or based on flawed methodology. Even if the estate had produced evidence of minor irregularity, it may have only impugned the weight of the evidence, not its admissibility. *Dick v. Molitor*, 305 Minn. 390, 234 N.W.2d 583, 586 (Minn. 1975).

[¶ 13.] Finally, the estate maintains that the test result was inadmissible because the coroner was not one of the professionals authorized to take blood samples in SDCL 32–23–14:

> Only a physician, laboratory technician, registered nurse, physician's assistant, phlebotomist, expanded role licensed practical nurse, medical technician or medical technologist may withdraw blood for the purpose of determining the alcoholic content therein. This limitation does not apply to the taking of a breath or other bodily substance specimen....

This statute applies to prosecutions for DUI. In criminal cases "the law is more particular as to who withdraws blood samples because of the greater need for accuracy in the criminal prosecution." *Dick*, 234 N.W.2d at 586. Here, the sample was collected under civil law, SDCL title 34, dealing with public health and safety. *See* SDCL 19–16–12 (Rule 803(8)).

[¶ 14.] Most courts addressing this question have held that test results on blood samples taken by coroners or morticians are admissible evidence. *See e.g., Interstate Life and Accident Ins. Co. v. Whitlock*, 112 Ga.App. 212, 144 S.E.2d 532 (Ga.Ct.App.1965) (results from blood sample drawn from deceased driver by coroner admissible in action against decedent's insurer when competent chain of custody for sample established); *Stattner v. City of Caldwell*, 111 Idaho 714, 727 P.2d 1142 (Idaho 1986) (evidence of blood alcohol test conducted by coroner pursuant to statute on deceased driver's blood admissible as public record); *Hinote v. Aluminum Co. of Am.*, 463 N.E.2d 531 (Ind.Ct.App.1984) (statute excluding blood test results made pursuant to statute authorizing collection by coroner for statistical purposes only did not apply when sample also analyzed by state police as part of accident investigation); *Brooks v. Engel*, 207 N.W.2d 110 (Iowa 1973) (sample taken by mortician is reliable); *Webb v. Stone*, 445 S.W.2d 842 (Ky.Ct.App.1969) (sample collected by

mortician who was also deputy coroner was presumably reliable); *McLaughlin v. Fireman's Fund Ins. Co.*, 582 So.2d 203 (La.Ct.App.1991) (blood alcohol content of deceased driver admissible when sample taken by coroner and tested), *writ denied*, 586 So.2d 536 (La.1991); *Dick*, 234 N.W.2d at 585–86 (results from samples taken by mortician at the direction of the coroner, pursuant to coroner's statutory obligation, are admissible); *State ex rel. Geyman v. Pinnell*, 669 S.W.2d 301 (Mo.Ct.App.1984) (evidence from BAC result on deceased driver was not privileged information when sample taken by coroner pursuant to statute for statistical purposes); *Steere Tank Lines, Inc. v. Rogers*, 91 N.M. 768, 581 P.2d 456 (N.M.1978) (statute requiring medical professional to withdraw blood sample does not apply when sample drawn from corpse); *Gallagher v. Ing*, 367 Pa.Super. 346, 532 A.2d 1179 (Pa.Super.Ct.1987) (blood sample drawn from deceased driver by doctor but sent by coroner's office to state laboratory pursuant to statutory mandate admissible); *Wooldridge*, 626 P.2d at 1010 (coroner could testify on results of a BAC report under statute allowing coroner to perform the testing as part of criminal investigation); *Johnson v. Wyoming*, 911 P.2d 1054 (Wyo.1996) (finding that a report stemming from coroner's statutory duty of collecting blood sample from decedent's body for chemical testing was admissible in a workers' compensation action because implied consent statute did not apply); *but see McGough v. Slaughter*, 395 So.2d 972 (Ala.1981) (holding that even though statute authorized the collection of blood samples to determine cause or manner of death, statutory language did not provide for reliability; therefore, results were inadmissible absent compliance with statute mandating general evidence principles); *Smock v. Highway Comm'r of Bloomington Township*, 60 Ill.App.3d 201, 17 Ill.Dec. 446, 376 N.E.2d 445 (Ill.Ct.App. 1978) (concluding that in a negligence action, third party may object to admission of blood analysis results of decedent because it was presumed that decedent

would have withheld consent for the taking of the blood sample); *Gard v. Michigan Produce Haulers,* 20 Mich.App. 402, 174 N.W.2d 73 (Mich.Ct.App.1969) (blood sample taken by mortician not reliable). We find no abuse of discretion in admitting this evidence.

## 2. DUI Presumption Instruction

 [¶ 15.] Aldinger's sobriety at the time of the accident was an issue at trial. By his own admission he had been drinking earlier in the evening. When the PBT test was administered, it showed he had a BAC between .001 and .049 percent. Based on this reading, the investigating officer decided not to pursue the matter further because Aldinger showed no "other signs of being impaired." In opening statements, nonetheless, counsel for the estate suggested otherwise, asserting that of Aldinger's group, Peterson "was the only one that wasn't intoxicated that night." Aldinger's drinking and its effect on his driving came up in various questions posed by the estate's counsel.

[¶ 16.] On the other hand, based on the coroner's report, the sobriety of Wangsness as a pedestrian was also at issue. Regrettably, though, his blood alcohol level was improperly measured against the statutory DUI limit. Defense counsel asked the coroner:

> Q. And do you know what is considered to be the legal limit for driving in South Dakota?
>
> A. Not exactly. Point one – no.
>
> Q. Okay. If it's [.10] this would be two and a half times the legal limit; is that correct?
>
> A. Um-hum; um-hum.

There was no objection, however. In closing argument, defense counsel did not attempt to compare the decedent's BAC to the presumptive DUI limit. He said only, "But the fact of the matter is, folks, he has a point 256 blood alcohol. That – that's a very intoxicated person." Again, there was no objection.

 [¶ 17.] In *American State Bank v. Mayer,* 326 N.W.2d 110, 111 (S.D.1982), we held that a deceased pedestrian's BAC test result should not have been admitted in evidence because it was unfairly prejudicial, confused the issues, and misled the jury by putting the pedestrian "on the same level with the intoxicated operators of vehicles who violate" our DUI laws. Following a retrial and another appeal, we clarified our original holding. *American State Bank v. List–Mayer,* 350 N.W.2d 44 (S.D.1984). A pedestrian's BAC can be admitted if relevant to the issue of contributory negligence, as a person's alcohol level influences "coordination, reaction time, ability to make accurate judgments and decisions, and related physical and cognitive abilities." *Id.* at 46. Nonetheless, we continued to bar "strong association between the blood alcohol content of the injured [pedestrian] and the ramifications of our driving while intoxicated laws and the statutory presumptions flowing from certain blood alcohol content levels." *Id.*

[¶ 18.] The defense sought and received part of a pattern DUI instruction explaining to the jury when the presumption of being under the influence of alcohol applies under South Dakota law. That instruction stated:

> The amount of alcohol in a person's blood at the time alleged as shown by chemical analysis of the person's blood, breath, or other bodily substance shall give rise to the following presumption: if there was at that time ten hundredths percent (.10) or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

The estate objected to this instruction because "by implication it will be applied to pedestrians in this case, including [Wangsness]," but the court allowed it because the PBT test result tended to contradict the estate's position on Aldinger's driving ability.

[¶ 19.] It appears from a close reading of the record that the court gave the instruction intending it to apply to Aldinger, not Wangsness. We think it was suitable for that limited purpose, though we have held that in criminal prosecutions PBT test results are inadmissible. *State v. Richards*, 378 N.W.2d 259 (S.D.1985). The admissibility of the PBT test is not an issue here, only the instruction concerning its meaning. "Instructions are adequate, when considered as a whole, if they correctly state the law and properly inform the jury." *State v. Hart*, 1996 SD 17, ¶ 13, 544 N.W.2d 206 (citation omitted).

[¶ 20.] Still, the estate argues that a limiting instruction should have been given so the jury would not have been misled into applying the DUI presumption to Wangsness by concluding that because the decedent's blood alcohol level was above the legal limit, that he was presumptively under the influence and thus contributorily negligent. Obviously, a limiting instruction would have been helpful. But the estate did not propose one. To obtain a limiting instruction, a party must ordinarily request it. SDCL 19–9–12 (Rule 105). Based on this record, we cannot say the court erred.

[¶ 21.] Affirmed.

[¶ 22.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.